261 A.2d 627.

GRAFTON H. WILLEY, III *et al. vs.* TOWN COUNCIL OF THE TOWN OF BARRINGTON *et al.*

FEBRUARY 6, 1970.

PRESENT: Paolino, Powers and Kelleher, JJ.

PAOLINO, J. The plaintiffs brought this civil action in

the Superior Court to declare null and void an amendment to the zoning ordinance of the Town of Barrington and to enjoin the issuance of any building permit sought in reliance thereon.[1] The plaintiffs commenced this action for themselves and as representatives of a class consisting of all the residents and property owners of the Country Club Manor Plat, an A Residence Zone in the Town of Barrington, hereinafter referred to as the plat. The defendants are the members of the town council, the building inspector, and the Industrial National Bank of Rhode Island, which was allowed to intervene as a party defendant by the Superior Court under Rule 24 (a) of the Rules of Civil Procedure of the Superior Court. A justice of the Superior Court heard the case and, upon the completion of the plaintiffs' case, granted defendants' Rule 41(b)(2) motion to dismiss. A judgment incorporating his decision was entered from which the plaintiffs have prosecuted this appeal.

The issues raised by this appeal involve (1) the question of plaintiffs' standing to challenge the legality of the amendment in question, (2) whether the town council hearing held on February 10, 1969, satisfied the requirements of G. L. 1956, §45-24-4.1, as enacted by P. L. 1967, chap. 173, sec. 2, requiring a public hearing at which opportunity shall be given all persons interested to be heard, and (3) whether the amendment was adopted in conformity with the comprehensive zoning plan in effect in the town.

The record discloses the following pertinent facts. At the January 13, 1969 regular meeting of the town council an ordinance was introduced amending the zoning ordinance and zoning map by classifying and designating as a C Commercial Zone four lots of land described on Tax Assessor's

---

[1] In their brief defendants state that the building permit was issued before this complaint was brought and that therefore the request for injunctive relief is moot. On the view we take this is of no consequence and requires no discussion.

Plat 23 as lots numbered 282, 283, 284 and 285. The proposed amendment was referred to the February meeting for hearing and action, and the town clerk was ordered to publish and give proper notice in accordance with law.

The four lots were located in an A Residence Zone and, since the enactment of the first Barrington zoning ordinance on March 25, 1926, had been zoned for residential use. They constitute one parcel of land, formerly owned by one Helen F. Sewall, and are bounded westerly by County Road, southerly upon the southerly area of Mark Wood Drive, easterly by land in an A Residence Zone, and northerly by the property of the Barrington District Nursing Association. Running northerly from the intersection of Mark Wood Drive, lots 282 and 283 front for a distance of 108 feet on County Road. They extend easterly from County Road a distance of 120 feet to lot 284, which fronts 50 feet on the northerly line of Mark Wood Drive and abuts the westerly line of lot 285, which fronts on Mark Wood Drive for a distance of 42 feet. Lots 284 and 285 run northerly from Mark Wood Drive for a distance of 108 feet. See *Sewall* v. *Zoning Board of Review*, 93 R. I. 109, 110-111, 172 A.2d 81, 82, which involved these same lots.

On April 29, 1969, Mrs. Sewall conveyed the property to Industrial National Bank of Rhode Island. The bank purchased it for the purpose of erecting a branch bank on the property, a use permitted in a C Commercial Zone, but not in an A Residence Zone.

The town council scheduled a public hearing on the proposed amendment for February 10, 1969. It is undisputed that notice was given as required by §45-24-4.1, that owners of property within 200 feet of the four lots were notified by registered mail, and that notice by publication was duly given. It appears from the minutes of that meeting that five residents of Mark Wood Drive appeared and spoke in favor of the amendment; that plaintiff Willey, representing

himself and residents of the plat, spoke in opposition, as did plaintiff Brothers; and that letters in opposition from two property owners and from Councilman Carmine J. Longo were read. Others appearing at the hearing included counsel for Mrs. Sewall and the bank, an officer of the bank, two real estate brokers who spoke in favor of the amendment, and an attorney representing the two property owners whose letter opposing the amendment was read on their behalf. After the hearing the council held the matter under advisement. The president of the council disqualified himself from participating in the meeting, and Councilman Longo was absent because of illness.

There is testimony in the transcript that following the February 10th meeting the three councilmen who participated in the deliberations on the proposed amendment discussed a meeting to accommodate Councilman Longo and decided to meet at the latter's house. Accordingly, on the evening of March 10, 1969, all three went to Councilman Longo's home prior to the regularly scheduled meeting of the council at the town hall. The council president and the town clerk were not present at the meeting. They discussed the amendment and took a formal vote thereon. The minutes of that meeting, which is referred to as a special meeting, show that three councilmen voted to approve the proposed amendment and that Councilman Longo voted against.

At the conclusion of the special meeting the three councilmen went to the town hall for the regular council meeting. Prior to the regular meeting they met in executive session at the town hall and took another vote in favor of the amendment. They informed the town clerk, who was present at this meeting, of the vote taken at Councilman Longo's home. They then held the regular monthly council meeting and, after considering other council business, formally announced the adoption of the amendment, which,

by its terms, provides that it shall take effect upon its passage.

On May 3, 1969, plaintiffs filed the present complaint, in which they allege, among other things, that the proposed structure will adversely affect the value of their properties. Upon completion of plaintiffs' case, defendants moved for an order of involuntary dismissal pursuant to Rule 41(b)(2) of the Superior Court Rules of Civil Procedure on the ground that upon the facts and the law plaintiffs had shown no right to relief. The trial justice rendered a decision which contains findings as provided in Rule 52(a). After discussing the facts and the applicable law, he held that:

1. " * * * the hearing of February 10th was a valid hearing and that no illegality attached to it because of the inability of certain residents who may have wanted to attend the meeting were unable to attend."

2. " * * * the amendment to the Barrington Zoning Ordinance and Zoning Map did conform with the comprehensive plan."

3. " * * * plaintiffs have not shown by any evidence that they have the requisite standing to sue in ac-accordance with the guidelines that were laid down in *McCarthy vs. McAloon*, 79 R. I., 55. * * * the plaintiffs must have some interest which is adversely affected, not in common with all the other residents of the Town of Barrington. The Court feels that the plaintiffs in this matter have not shown that."

A judgment based on his decision was thereafter entered in the Superior Court and from such judgment plaintiffs prosecuted an appeal to this court.

I

Standing of Plaintiffs to Challenge Validity of Amendment

On the view we take it is unnecessary to discuss the question of standing. For the purpose of this case we shall as-

sume without deciding that paintiffs had standing to bring this action.

## II
### Legality of the February 10, 1969 Council Hearing

The plaintiffs next contend that the hearing conducted by the town council on February 10, 1969, did not satisfy the terms of §45-24-4.1 requiring "* * * a public hearing, at which, opportunity shall be given all persons interested to be heard * * *." Section 45-24-4.1, in relevant part, reads as follows:

> "Specific ordinances.—No such ordinance making a specific change in the zoning map shall be enacted, amended or repealed until after a public hearing, at which, opportunity shall be given all persons interested to be heard, has been held upon the question of the enactment, amendment or repeal of such ordinance, before the city or town council * * *."

The plaintiffs argue that because of the extreme weather conditions on February 9 and February 10, 1969, persons who would have ordinarily attended the hearing did not do so because they were unable to leave their homes; that, therefore, the council's refusal to honor plaintiff Willey's request that the hearing on the proposed amendment be adjourned to a later date deprived interested persons of a reasonable opportunity to be present and to be heard in accordance with the mandate of §45-24-4.1; that compliance with the requirements of §45-24-4.1, that a public hearing be held at which opportunity shall be given all persons interested to be heard, is jurisdictional and a condition precedent to action by the council; and that in the circumstances enactment of the ordinance exceeded the jurisdiction of the town council.

In disposing of this issue the trial justice said:

> "The evidence in this matter indicates on the evening of February 10, at least some of these plaintiffs were present and at least eighty-five per cent of the residents

of Country Club Manor Plat of which these plaintiffs are residents were heard through a spokesman, though not through an attorney. This spokesman is one of the plaintiffs who in fact is an attorney and the evidence indicates that spokesman was given every opportunity to be heard and to cross examine if he so desired.

"In the light of the testimony as to what transpired at that hearing, the Court feels and finds that the plaintiffs and such other citizens who desired to be heard were given the opportunity to be heard at that hearing which the statute requires."

The trial justice held that the February 10 hearing was a valid hearing and that no illegality attached to it because certain residents who may have wanted to attend were unable to do so.

We find no error. The requirement of §45-24-4.1, that a public hearing be held "* * * at which opportunity shall be given all persons interested to be heard," is jurisdictional, and compliance therewith is a condition precedent to action by the town council under such statute. Compare *Rhode Island Home Builders* v. *Budlong Rose Co.*, 77 R. I. 147, 74 A.2d 237. As the court said in *Schlagheck* v. *Winterfeld*, 108 Ohio App. 299, 306, 161 N.E.2d 498, 504, 9 Ohio Op.2d 277, 281, cited by plaintiffs: "The term, 'public hearing,' to be held by a legislative body connotes the opportunity for interested persons to appear and express their views pro and con regarding proposed legislative action." The evidence in the case at bar supports the finding of the trial justice that the plaintiffs and such other citizens who desired to be heard were given the opportunity to be heard. Three of the plaintiffs, Willey, Brothers, and Bixler, attended the meeting. Bixler and Brothers testified that they were able to drive to the meeting notwithstanding the fact that their driveways had not been cleaned. Willey and Brothers spoke in opposition to the amendment. Bixler chose not to speak because, according to his testimony in the Superior Court:

"The plat people were represented, according to my understanding, by Mr. Willey, and after having heard Mr. Willey express what I thought were the sentiments of the people of the plat, I could add nothing to it. I could see no reason for speaking."

The plaintiff Willey testified that he had informed the council that he appeared as spokesman for 85 per cent or more of the residents of the plat and that they had not intended to call any witnesses. He admitted that he was permitted to make any statement he wanted and that he was allowed to cross-examine any of the witnesses who were called.

It also appears from the evidence that two of the plaintiffs who did not attend the February 10th meeting, Swenson and Messinger, were not aware of the proposed amendment or the meeting thereon and, of the plaintiffs who knew of the meeting, only one, Davenport, did not attend.

The records of the weather bureau are in evidence. It appears that the weather conditions on February 9 and 10 were bad; that at least ten inches of snow had fallen; and that winds approached a velocity of 40 miles an hour. However, the weather reports indicate that the snow had stopped some six or seven hours prior to the meeting, and that, in the 19 hours preceding the meeting, less than an inch of snow had fallen. It is undisputed that the councilmen deliberated whether to postpone the meeting because of the weather conditions. In the exercise of their judgment they decided to hold the hearing. This was an exercise of discretion which the trial justice upheld because, as we have previously stated, he found (1) that the plaintiffs and such other citizens who desired to be heard were given the opportunity to be heard in accordance with the requirements of §45-24-4.1 and (2) that no illegality attached to the hearing because certain residents who may have wanted to attend were unable to do so.

The plaintiffs argue strenuously that the trial justice's

statement that certain persons who would have attended the hearing did not do so because of the weather conditions requires the conclusion that the hearing was held illegally. We do not agree. There is no evidence in this record that the weather conditions on the evening of February 10th were such that travel from the plat to the town hall was impossible; in fact, the evidence shows the contrary. Now it may very well be that certain persons, because of age, physical condition or personal preference, chose not to leave their homes because of the weather. But this does not mean that they were not afforded the opportunity to be heard in accordance with the provisions of the statute. There is no claim of bad faith on the part of the town council in deciding to hold the hearing. On this record we cannot say that the council abused its discretion in holding the hearing; nor can we say that the trial justice was clearly wrong in finding that "* * * the plaintiffs and such other citizens who desired to be heard were given the opportunity to be heard * * *" in accordance with the requirements of §45-24-4.1. Compare *Brown* v. *Shelby Township*, 360 Mich. 299, 103 N.W.2d 612.

### III
### The Comprehensive Plan

The plaintiffs' final contention is that the amendment violates the statutory requirement of comprehensiveness and the remaining provisions of §§45-24-3 and 45-24-5.

Before considering plaintiffs' contention that the reclassification of the four lots constitutes illegal spot zoning in violation of the statutory requirement of comprehensiveness, it may be helpful to again refer to the character of the area in which they are located. The rezoned lots are located on the easterly side of County Road, a main state highway between East Providence and Warren. The lots are not part of the Country Club Manor Plat, and there is presently no access from Mark Wood Drive to the plat or vice versa.

Looking north and south from the lots, the westerly side of County Road is zoned commercial as far as the eye can see. The property uses on the easterly side of County Road, looking north, are the Princess Hill Cemetery, the Town Hall, the Peck Jr. High School, and a doctor's office, all in an A Residence Zone. The building containing the doctor's office is located on the lot which is immediately to the north of the subject property. Such an office constitutes a commercial use under the Barrington zoning ordinance and was authorized by a "recent" grant of a variance by the town's zoning board. The property uses on the same side, looking south, from the rezoned parcel, are a used car lot, an automobile agency, a gasoline station, a shopping center with three stores and another gasoline station, all of which are in a C Commercial Zone. There are also a church, a community center and a dentist's office on the easterly side of County Road south of the lots in question. It appears from the evidence that of all the lots zoned residential abutting the easterly side of County Road facing County Road, as far as the eye can see both north and south, there is not one single piece of property that is being used as a residence. The subject lots are bounded on their easterly side by an A Residence Zone.

In passing on the question whether the amendment was in conformity with the town's comprehensive zoning plan, the trial justice stated that there was no evidence before him to overcome the presumption that the action of a municipal body acting in a legislative capacity is valid. He noted that the parcel of land involved here bordered both on a commercial district and a residence district; that the town council in the exercise of its discretion decided that the extension of the commercial district into the residential district bore a reasonable relationship to the public health, safety or welfare; and that, in the absence of evidence to overcome the presumption of legality of the council's action,

he could not say that the council abused its discretion in adopting the amendment. He concluded that the amendment conformed with the comprehensive plan. He relied on the decision of this court in *Hadley* v. *Harold Realty Co.*, 97 R. I. 403, 198 A.2d 149 and *Carpionato* v. *Town Council*, 104 R. I. 490, 244 A.2d 861.

The plaintiffs, in urging the invalidity of the amendment, rely heavily on our decision in *D'Angelo* v. *Knights of Columbus Bldg. Ass'n.*, 89 R. I. 76, 151 A.2d 495. They argue that under *D'Angelo*, individual treatment of a single lot or small area apart from the entire use district in which it is located is presumptively invalid; that such classification is illegal spot zoning; that the presumption of comprehensiveness has no application to spot zoning; and that in order to justify the rezoning of a limited area, there must have been either a substantial change in conditions in the area since the original comprehensive ordinance or a mistake in the original ordinance. Briefly, plaintiffs argue that the size of the area rezoned is such that the action of the council must be prima facie illegal.

The validity of an amendment to a zoning ordinance must be determined on the facts and circumstances of each case. Accordingly, the result in *D'Angelo* is not controlling here. The facts of that case differ substantially from those in the case at bar. In *D'Angelo* a Knights of Columbus hall was located on land situated in a residence E zone of the Town of Bristol. The zone was primarily residential in character, as it had been since the enactment of the original zoning ordinance in 1931. As the court pointed out in *D'Angelo*, "The lot belonging to the Knights of Columbus is entirely surrounded by property classified as residential." *Id.* at 81, 151 A.2d at 497. It was being used as a nonconforming use. The town council approved an amendment reclassifying the Knights of Columbus property as a business F zone, but all the surrounding area remained classified

as residence E. The Knights of Columbus intended to lease the property to the United States government for use as a post office, a use not permitted in a residence E zone, but allowed in a business F zone. D'Angelo, an adjoining property owner in the same use zone, sought injunctive relief. In discussing the question of spot zoning, the court in *D'Angelo* stated the rule, which we reaffirm, as follows:

> "The validity of spot zoning in a particular case depends upon whether the zoning authority operated within the limitations prescribed by the enabling act. General laws 1956, §45-24-3. If the circumstances indicate that the new zoning classification is consistent with the over-all local plan and is in the best interests of the community as a whole, then the spot zoning may be upheld. *Bartram* v. *Zoning Commisison, supra.* It is not enough, however, that the intended use of the property will be of benefit to the community. *Parker* v. *Rash,* 314 Ky. 609. The requirement of consistent zoning treatment throughout the community is basic to the local zoning power and may not be disregarded. See *Leahy* v. *Inspector of Buildings,* 308 Mass. 128." *Id.* at 86-87, 151 A.2d at 500.

In applying the rule to the facts before it in *D'Angelo,* the court held that on the record before it the complainants had made a sufficient showing of invalid spot zoning to entitle them to relief. It based its decision upon a finding that the classification of the Knights of Columbus property was not consistent with the classification of surrounding properties similarly situated; that the rezoning of that property was not in pursuance of the general scheme prevailing throughout the town; and that, therefore, the amendment was not in conformity with the statutory requirement of comprehensiveness in zoning.

The facts in the case at bar are, as we have pointed out, entirely different from those in *D'Angelo.* The case before us involves not the creation of a new commercial district as in *D'Angelo,* but rather the extension of an existing commercial district into an existing adjoining residential dis-

trict and is more like the situations which existed in *Carpionato* v. *Town Council, supra,* and *Hadley* v. *Harold Realty Co., supra,* both of which, in our judgment, are controlling here.

As the court said in *Carpionato* at page 863:

"There is valid spot zoning and invalid spot zoning. The fact that a small portion of land is involved in a legislative action does not make it ipso facto illegal spot zoning. The crucial test for determining if an amendment to a zoning ordinance constitutes illegal spot zoning depends upon whether its enactment violates a municipality's comprehensive plan."

Thus, our initial inquiry must be to determine whether the amendment conformed to the comprehensive plan of the town's zoning ordinance. The town council in amending a zoning ordinance is exercising a legislative function, which acquires a presumption of legality. *Carpionato, supra,* at 863, *D'Angelo, supra,* at 83, 151 A.2d at 498. Since we do not have a factual situation similar to that in *D'Angelo,* the presumption of validity includes the presumption that the amendment was in accordance with the comprehensive plan. *D'Angelo, supra,* at 83, 151 A.2d at 499.

In *Hadley, supra,* at 406, 198 A.2d at 151, the court restated the rule that it is mandatory that zoning regulations conform to a comprehensive plan, but held that the other objections contained in §45-24-3 are directory only. In discussing the broad power of the local legislature to amend a zoning ordinance changing districts, the court said:

"We cannot agree, however, that the comprehensiveness contemplated in our enabling act either proscribes basic changes in the regulations contained in an ordinance or precludes such revisions thereof as contemporary circumstances and conditions may from time to time require. Indeed §45-24-5 expressly empowers town councils 'from time to time to amend or repeal any such ordinance and *thereby change said regulations or districts* * * *.' (italics ours) Because of the provisions thus noted, it is our opinion that the phrase

558

'comprehensive plan' was not intended to preclude change and preserve inviolate use districts established in an original zoning ordinance, but that it contemplates revision and change in the regulations to whatever extent that may be accomplished by a valid exercise of the police power delegated to the local legislature." *Id.* at 408, 198 A.2d at 152.

Again, in *Hadley,* the court expressly stated that the rule in *D'Angelo* was limited to the facts of that case, i.e., "'* * * that the amendment of a regulation contained in the zoning ordinance in such a manner as to confer upon one parcel of land the benefits of the use classification that is denied property similarly situated is illegal as spot zoning, so called." *Id.* at 410, 198 A.2d at 153. The court went on to say:

"We have, however, refused to extend the concept of illegality resulting from spot zoning, so called, and in particular with respect to exercises of the zoning power by the local legislatures beyond the rule stated in *D'Angelo* v. *Knights of Columbus Building Ass'n, supra.* We rejected the argument that the amendment of the terms of the zoning ordinance changing the use classification of land is invalid as spot zoning where there had been no showing either that the prior classification had been erroneously established or that since its establishment there had been a substantial change in the character of the uses in the neighborhood in *Cianciarulo* v. *Tarro, supra.* At page 363 of the opinion we said: 'We think that a reconsideration or re-examination of the conditions in any area of the city may justify a change in the zoning ordinance as it affects that area, even though there has been no change of conditions in the area since the adoption of the original ordinance.'" *Id.* at 410-411, 198 A.2d at 153-154.

The only limitation placed on the town council's discretionary power is that any change effected by an amendment must be in conformity with the municipality's comprehensive plan. *Carpionato, supra,* at 863. In *Hadley,*

in defining what is meant by the words "comprehensive plan," the court said:

> "We find inescapable the conclusion that the legislature, in using the phrase 'comprehensive plan' in the enabling act, intended to use it in the context of the zoning power which is valid only as an exercise of the police power of the state. In such context a 'comprehensive plan' must of necessity be a scheme or formula of zoning that reasonably relates the regulation and restriction of land uses and the establishment of districts therefor to the health, safety, and welfare of the public and thus to the police power." *Hadley, supra,* at 408, 198 A.2d at 152.

Also the court set forth the test to be used in determining whether an amendment to a zoning ordinance violated the comprehensive plan. It said that if the amendment bears a reasonable relationship to the public health, safety or welfare so as to justify its adoption, the comprehensive plan remains intact. *Id.* at 409, 198 A.2d at 153.

Thus, the question before us here is not whether the amendment was illegal spot zoning, but rather whether the extension of a commercial zone into an existing adjoining residential district bears a reasonable relationship to the public health, safety or welfare so as to justify an exercise of the police power.

At the time the council was considering the petition to rezone the Sewall parcel, this land, which abuts a main arterial highway, was zoned residential while the parcel immediately to its north was, by reason of the zoning board's recent action, subject to a commercial use. The Sewall property in February 1969 was somewhat like a residential island sandwiched in between commercial uses to its north and to its south with commercial uses also abounding to its west. When the council rezoned the subject property, it had actually permitted the entire strip of land abutting the easterly side of County Road beginning at the northern most entrance to Mark Wood Drive and running

southerly for a distance of approximately 600 feet to be used for commercial purposes. In these circumstances and from the record before us, we cannot fault the council's action.

The plaintiffs in challenging the council's action had the burden of showing that the amendment violated Barrington's comprehensive plan. The trial justice found that there was no evidence before him that would overcome the presumption of legality of the council's action; that the town council did not abuse its discretion in deciding that the amendment bore a reasonable relationship to the public health, safety or welfare; and that, therefore, the amendment did conform to the comprehensive plan. We are satisfied that the evidence supports his findings of fact on this issue, that he did not misconceive or overlook any material evidence, and that he applied the correct law to the facts. Therefore, we cannot say that he was clearly wrong. *Cianciarulo* v. *Tarro*, 92 R. I. 352, 168 A.2d 719.

*Toole* v. *May-Day Realty Corp.*, 101 R. I. 379, 223 A.2d 545, and *Town & Country Mobile Homes, Inc.* v. *Building Inspector*, 93 R. I. 383, 175 A.2d 556, are of no help to plaintiffs. In *Toole*, we affirmed the finding of the trial justice that the amendment had not been adopted in accordance with the city's comprehensive plan. We pointed out in *Toole* that the factual situation there was substantially similar to that in *D'Angelo* and held that it was governed by *D'Angelo*.

In *Town & Country Mobile Homes, Inc.*, the trial justice found that the amendment there was a capricious and unreasonable restriction of complainant's property and, therefore, held that insofar as it related to complainant's land it was null and void. We held that lack of compliance with the statutory requirement of conformity with the city's comprehensive plan was implicit in the trial justice's finding and that his findings were supported by the evidence. It

is true, as plaintiffs point out, that we said there was no evidence in the record showing that the city council complied with the comprehensive plan. While we frankly admit that plaintiffs may be justified in interpreting our statement to mean that we were thinking of where the burden of proof was in that case, we take this occasion to state that that is not what we meant. What happened is that after a hearing on the merits the trial justice found that the complainant had satisfied him that the amendment was not justified; in other words, the complainant's evidence overcame the presumption of validity and established to the satisfaction of the trial justice that the amendment was not adopted pursuant to the city's comprehensive plan. We affirmed and said that there was no evidence in the record showing compliance with the comprehensive plan.

The plaintiffs' appeal is denied and dismissed, the judgment dismissing the action on the merits is affirmed, and the cause is remanded to the Superior Court.

Motion for reargument denied.

ROBERTS, C. J., and JOSLIN, J., did not participate.

*Roberts & McMahon, Dennis J. Roberts, II,* for plaintiffs.

*Hinckley, Allen, Salisbury & Parsons, Guy J. Wells, William P. Thornton, Jr.,* for Intervenor, Industrial National Bank of Rhode Island.

*James A. Jackson,* Town Solicitor, for defendants.