DECISION
This case is an appeal from a February 28, 1995 decision of the Coastal Resource Management Council (Council) designating a portion of land owned by the plaintiffs as a public right of way. Jurisdiction is pursuant to G.L. 1956 (1993 Reenactment) §42-35-15.
Facts/Travel
The present appeal concerns the Council's attempt to designate a portion of the Buonomanos' land as a public right of way. The subject portion, approximately 10 feet in width and 90 feet in length, is an "L" shaped path following the contours between lots 22 and 23 on Tax Assessor's Plat No. 369 in Warwick, Rhode Island. The Buonomanos' purchased one portion of the plat in 1964 and another in 1965.[1]
The path in question leads to a wide, sandy beach and Greenwich Bay. Three signs stand at the entrance, stating "Private Walkway, no vehicles," "No Fires," and "No parking either side," respectively. Despite these signs, members of the public used the area frequently as a means of shoreline access.
Pursuant to its regulations, the Council held a public hearing on June 7, 1994. The purpose of that hearing was to allow the Council's rights of way subcommittee (subcommittee) to receive evidence concerning designation of the land as a public right of way. First to speak was Warwick City Council member Al Gemma. Councilman Gemma introduced a number of Red Cross swimming certificates purporting to show that the beach had been used for swimming lessons. He also produced photographs of people using the subject property.
Councilman Christopher Cyr spoke next, recounting his memories of using the land between 1943-50. He also remembered others using the property for shore access during that period. The subcommittee then heard 59 present and former residents of the area who spoke in support of designating the land as a public right of way. These individuals spoke of their past enjoyment of the beach area and their hope that the path would remain open in order to ensure future use.
Four people, all residents of the area, expressed a desire that the path remain a private right of way. These residents relayed their concerns that destination of a public right of way would worsen previous problems such as lack of adequate parking, litter, driving on the beach, and excessive noise.
The Buonomanos did not speak at the subcommittee hearing. Their attorney, James Sloan, offered an affidavit in which the Buonomanos stated that they considered the right of way to be private but they intended to continue to allow the public to make use of it. The affidavit also stated that the Buonomanos had closed the right of way for a 24-hour period one day each year since their acquisition of the property. The Buonomanos also submitted 22 affidavits corroborating this claim.[2]
The subcommittee prepared a report based on the information received at the June 7, 1994 hearing. That report contained twenty four (24) findings of fact, including two relating to the Buonomanos' efforts to close off the path for one day each year. The subcommittee noted the Buonomanos' claim in their affidavit as well as the "signatures"[3] corroborating this claim. In the next finding of fact, the subcommittee found that "no person actually testified that he or she had ever observed the aforementioned so-called notice, nor did anyone testify that public access to the right of way had ever been restricted or closed off by the Buonomanos."
The Council held a full hearing on February 14, 1995, at which time the subcommittee report was read. The Buonomanos and their attorney attended that hearing. After the subcommittee report was accepted, Mr. Sloan attempted "to supplement the record to a very brief degree. Tr. at 116. The Chairwoman reminded Mr. Sloan that the council was not willing to hear anything other than "new" testimony. Id.
Mr. Sloan then questioned Mr. Buonomano about his efforts to close off the path one day each year. Mr. Sloan attempted to introduce photographs showing the date and time that this was done between 1964 and 1993. The Council refused to receive this evidence, concluding that the testimony was not "new." Mr. Sloan argued that because the subcommittee report stated that no witness had testified to the closing of the path, the evidence was "new." Tr. at 124. The council found the evidence to be in the nature of rebuttal, however, and prohibited its introduction. Tr. at 131.
The Council then heard from Edward Aldridge, a resident of the area who was unaware of the subcommittee hearing. Mr. Aldridge testified that he was opposed to making the land a public right of way. Tr. at 137. After hearing from one final resident, the Council voted to approve the subcommittee's recommendation to designate the path as a public right of way. Tr. at 142-43.
The Council filed a written decision on February 28, 1995. The Buonomanos filed the instant appeal on March 28, 1995. On April 4, 1995, they sought a stay of the Council decision. This motion was heard and denied by the court on April 7, 1995.
Standard of Review
The review of a decision of the Board by this Court is controlled by G.L. 1956 (1993 Reenactment) § 42-35-15 (g), which provides for review a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458.
Failure to Swear Witness
Plaintiffs argue that the testimony of unsworn witnesses appearing before the subcommittee is of no effect. Despite the subcommittee chairman's statement that "[a]ll witnesses shall be sworn," (Tr. at 3), the record reflects that this order was not carried out with respect to the hearing on the property subject to the appeal.[4] Because the only sworn evidence received at the subcommittee hearing was the plaintiffs' affidavit and the affidavits corroborating closure of the path for one day each year, plaintiffs claim the subcommittee recommendation, and ultimately the Council decision, are not based on substantial evidence.
The Council notes the general rule on the issue that, unless required by statute, rule or regulation, the swearing of witnesses is not required in administrative proceedings. SeeSewell v. Spinney Creek Oyster Co., Inc., 421 A.2d 36, 40 (Me. 1980). A review of the statutes, rules, and regulations relevant to this matter reveals no such requirement.
Previous rulings of the Supreme Court of Rhode Island on this issue do not aid the plaintiffs' argument. In Dunder v. Scuncio,86 R.I. 370, 134 A.2d 400 (1957), the court noted that the "regularity of proceedings before administrative agencies would be greatly enhanced by requiring an oath or affirmation to be given by all witnesses appearing before them." Id. at 374, 134 A.2d at 402. In Board of License Commissioners v. O'Conner,17 R.I. 40, 19 A. 1080 (1890), the court found the failure to swear witnesses at a liquor license revocation hearing was fatal to the proceedings. Id. at 40, 19 A. at 1081.
Neither of these cases, however, involved a public hearing similar to the one conducted before the subcommittee. Dunder
concerned a bureau of licenses hearing to determine whether the plaintiff process server had committed acts showing an abuse of power and other violations of the duties of his office. 86 R.I. at 371-72, 134 A.2d at 401. O'Conner involved a proceeding where the liquor licensee and certain individuals were summoned before the commissioners to testify on the charge that the licensee violated the liquor act by selling on a Sunday. 17 R.I. 41,19 A. 1081.
The hearing in this matter is distinguishable from those inDunder and O'Conner. The subcommittee held a "public hearing," a term that "connotes the opportunity for interested persons to appear and express their views pro and con regarding proposed legislative action." Willey v. Town Council of the Town ofBarrington, 106 R.I. 544, 551, 261 A.2d 627, 631 (1970). Another jurisdiction has noted that the requirement that witnesses be sworn differed where a similar dichotomy existed in the purposes of the hearings. Compare Broadhead v. Arizona Board of Pardons,725 P.2d 744, 748 (Ariz. App. 1986) (reversible error occurred where hearing officer failed to swear witnesses at parole revocation hearing, as hearing was a "truth seeking proceeding")with East Camelback Homeowners Assoc. v. Arizona Foundation forNeurology and Psychiatry, 500 P.2d 906, 913 (Ariz. App. 1972) (failure to place witnesses under oath did not invalidate zoning proceeding on application for expansion of nonconforming use).
Finally, plaintiffs' argument must fail as there was no showing that they objected to the failure to swear witnesses at the hearing, compare Broadhead, 725 P.2d at 748 (parolee specifically requested witnesses be sworn), nor has there been any showing of prejudice resulting from that failure. See EastCamelback, 500 P.2d at 913 (no showing that failure resulted in prejudicial error); see also G.L. § 42-35-15 (g) (reviewing court may reverse or modify agency decisions only where substantial rights have been prejudiced).
Scope of CRMC Power
The Council is an administrative agency charged with the responsibility of preserving, protecting, developing, and restoring the state's coastal resources. G.L. 1956 (1991 Reenactment) § 46-23-1; see also Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077, 1078 (R.I. 1988). One of the Council's duties is to designate public rights of way to the tidal areas of the state. G.L. § 46-23-6(E) (1) (1995 Cum. Supp.). In making such designations, the council is to consider a number of factors, including:
 (a) Land evidence records; (b) The exercise of domain over the parcel such as maintenance, construction or upkeep; (c) The payment of takes; (d) The creation of a dedication; (e) Public use; (f) Any other public record or historical evidence such as maps or street indexes; and (g) Other evidence as set out in § 42-35-10.[5]
 G.L. § 46-23-6(E) (6) (1995 Cum. Supp.)
After considering these factors, "[a] determination by the Council that a parcel is a right of way shall be decided by substantial evidence." G.L. § 46-23-7 (1995 Cum. Supp.) Substantial evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Newport Shipyard v. Rhode Island Comm. for HumanRights, 484 A.2d 893, 897 (R.I. 1984); Caswell v. George ShermanSand and Gravel Co., 424 A.2d 646, 647 (R.I. 1981).
Acquiring a Prescriptive Easement through Public Use
The Council argues that the doctrine of public use has established a prescriptive easement over the land in question. While the Supreme Court of Rhode Island has not addressed the issue recently,[6] "the trend of modern cases is to recognize that the public may acquire prescriptive easements." Bruce Ely,The Law of Easements and Licenses in Land, § 5.09[1] at 5-46 (1995). The fact that the Council is required by statute to consider public use as a factor in designating rights of way suggests a legislative intent to follow this trend. See G.L. § 46-23-6(E)(1)(e).
To acquire a private prescriptive easement in Rhode Island, one must show actual, open, notorious, hostile, and continuous use under a claim of right for a period of ten years. See Altieriv. Dolan, 423 A.2d 482, 483 (R.I. 1980); Russo v. Stearns FarmRealty, 117 R.I. 387, 391, 367 A.2d 714, 716-17 (1977); Foley v.Lyons, 85 R.I. 86, 90, 125 A.2d 247, 249 (1956); see also G.L. 1956 (1984 Reenactment) § 34-7-1. The burden is on the party claiming the easement to prove each element by a preponderance of clear and convincing evidence. See Alteri, 423 A.2d at 483;Russo, 117 R.I. at 391, 367 A.2d at 716-17; Sherman v. Goloskie,95 R.I. 457, 467, 188 A.2d 79, 84 (1963). As the elements necessary to establish a prescriptive easement acquired through public use are generally the same as those required to show a private prescriptive easement, see Bruce Ely, supra, at 5-47, the court will analyze the Council's decision under the Rhode Island law applicable to private prescriptive easements.[7]
Application of G.L. § 34-7-4
Prior to reviewing the Council's decision to determine if it is supported by substantial evidence, the court must address the role of G.L. 1956 (1995 Reenactment) § 34-7-4. The statute provides that "[n]o right of footway, except claimed in connection with a right to pass with carriages, shall be acquired by prescription or adverse use for any length of time." The Council claims that Daniels is the only case providing guidance on the statute's application. In Daniels, the court cited the statute in its effort to determine whether a prescriptive easement existed through public use. Relying on the state for authority, the court's analysis completely disregarded, as irrelevant, evidence of long-continued use by footpassers. Id. at 108-09, 99 A.2d at 10.
Contrary to defendant's assertion, however, Daniels is not singularly controlling on the statute's application. In PalisadesSales Corp. v. Walsh, 459 A.2d 933 (R.I. 1983), the court cited both the statute and Daniels for the proposition that "even long continued use by footpassers over the way . . . cannot establish an easement." Id. at 937 n. 8 (ellipsis in original). The court noted that there had been sufficient evidence of wheeled traffic over the way to establish it as a "vehicular path." Id.
The rule gleaned from Daniels and Palisades Sales is that, in order to establish a prescriptive easement, the party claiming such easement must show more than mere foot traffic over the way. The claimant must present evidence of wheeled traffic sufficient to establish the way as a vehicular path. The Council argues that it has met this burden. While conceding that the way was used primarily as a walking path, the Council points to the testimony of individuals claiming to have ridden bicycles (Tr. at 80, 85, 94), pushed baby carriages and wagons (Tr. at 80, 94), and pulled sailboats on trailers (Tr. at 73, 75, 78) on the path.
The Council's finding of both "pedestrian and vehicular" usage of the path is not clearly erroneous. Section 34-7-4 only precludes recognition of a prescriptive easement where the sole adverse use occurs through foot traffic. The statute is therefore not a bar to recognition of a prescriptive easement in this matter.
Review of Council Decision
Establishment of a prescriptive easement is primarily a question of fact. Bruce Ely, supra, § 5.02[2] at 5-8. This court will therefore review the Council's finding that a prescriptive easement was created in the same manner as other agency determinations of fact. See Milardo, 434 A.2d at 272 (reviewing court should reverse agency's factual conclusions only where totally devoid of competent evidentiary support). By way of review, the court notes that in order to establish a prescriptive easement, there must be a showing of actual, open, notorious, hostile, and continuous use under a claim of right for a period of ten years. Plaintiffs argue that the elements of continuity of use and hostility have not been shown. Because the court agrees that the Council's determination on the former issue is clearly erroneous, it does not reach the latter.
The general rule is that mere protest by a landowner, whether oral or written, will not serve to terminate public use. Bruce 
Ely, supra, 5.05[2] at 5-30; see also City of Derby v. DiYanno,118 A.2d 308, 310 (Conn. 1955) (prescriptive easement found to exist where only protest was "No Trespassing" sign); ConcernedCitizens of Brunswick County Taxpayers Ass'n v. State ex relRhodes, 404 S.E.2d 677, 686 (N.C. 1991) ("No Trespassing" signs and barricades insufficient to break continuity of use without act which actually prevents use of easement). A landowner may, however, interrupt adverse usage by asserting ownership before the required statutory period expires. Bruce Ely, supra, § 5.05[2] at 5-30.
In the instant matter, the plaintiffs' affidavit stated that they had closed off the path for one day each year. Over twenty affidavits corroborated that fact. The subcommittee (and eventually the Council) chose to disregard that evidence because "no person actually testified that he or she had ever observed the . . . so-called notice, nor did anyone testify that public access to the right of way had ever been restricted or closed off by the Buonomanos."
The Council has previously argued, and the court has agreed, that the subcommittee's failure to swear witnesses did not invalidate the June 7, 1994 hearing. Having made that argument, however, the Council may not now be heard to argue that written affidavits should be disregarded because no one "testified" to the issue in question. This is not simply a matter of the Council weighing unsworn testimony against affidavits and finding the former to be more reliable. The assertions contained in the affidavits were uncontradicted. The fact that "no person actually testified that he or she ever observed the . . . so-called notice" of closure does not mean that such closure never occurred. The Council's decision to overlook the affidavits is therefore clearly erroneous. Cf. Hughes v. Saco Casting,443 A.2d 1264, 1266 (R.I. 1982) (one acting in quasi-judicial capacity may not reject uncontradicted testimony without explanation).
While the evidence of record shows that the plaintiffs attempted to close off the path for one day each year, it is unclear whether those attempts were actually successful. Without further evidence and a Council ruling on this issue, the court can neither affirm nor reverse the Council's decision. The case is therefore remanded to the Council with instructions to determine whether use of the path in question was actually prevented by the plaintiff's closure.
[1] The record is replete with specifics concerning the history of the property in question. A detailed review of the chain of title is unnecessary here, however, given that the Buonomanos' ownership of the property is undisputed, as is the fact that the public used the path for shoreline access.
[2] Not all of the corroborating affidavits asserted that the Buonomanos had closed the land for one day each year between 1966 and 1993. The term of years varied depending on the personal knowledge of the affiant. Nonetheless, at least one affidavit corroborated closure from 1966 to 1993.
[3] The subcommittee's report and the Council's decision use this term despite the fact that the record contains affidavits, as well as a list of signatures, corroborating the Buonomanos' claim.
[4] There were sixteen separate rights of way at issue at the June 7, 1994 subcommittee hearing. As the record only contains the transcript pages relevant to the instant appeal, it is unclear whether witnesses speaking with respect to other parcels were sworn.
[5] This section sets forth the general scope of evidence admissible in administrative proceedings.
[6] The court last commented on this precise issue in Danielsv. Blake, 81 R.I. 103, 99 A.2d 7 (1953). In Daniels, the court implicitly recognized the viability of such a claim, although it found that the plaintiff had not shown all of the necessary elements. Id. at 109, 99 A.2d at 10.
[7] The one exception to this rule involves the burden of proof on the Council. Under the terms of G.L. § 46-23-7, the Council is not required to show a prescriptive easement by the elevated "clear and convincing" standard of proof, but instead is held to the lesser "substantial evidence" standard. Cf. Sartor, 542 A.2d at 1083 (dedication need only be shown by substantial evidence).