GIOVANNINA CIANCIARULO *et al. vs.* ANTHONY TARRO *et al.*

MARCH 22, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This bill in equity was brought to enjoin the respondents from acting pursuant to an amendment to the zoning ordinance to make any commercial use of certain property located on Broadway in the city of Providence. The cause was heard by a justice of the superior court who thereafter, on March 2, 1960, entered a decree denying and dismissing the bill. From that decree the complainants have prosecuted an appeal to this court.

It appears from the record that in 1956 one of the respondents, Anthony Tarro, hereinafter referred to as respondent, purchased a large dwelling house and the lot on which it stood. The property is located on the northerly side of Broadway between its intersections with Almy and

Courtland streets. Under the provisions of the zoning or-
dinance then in effect, this property was in a zoning district
classified as Residence R-4, usually referred to as a mul-
tiple dwelling district. It is not disputed that respondent,
who is an undertaker, purchased the property for use as a
funeral home, which is not a permitted use in a multiple
dwelling district.

All of the complainants are the owners of properties lo-
cated on Broadway between Almy and Courtland streets.
Two of these properties adjoin respondent's property on
the north side of Broadway while the other two are located
on the south side of that street. These properties until the
enactment of the amendment under consideration were all
classified as R-4 or for multiple dwelling use.

After respondent purchased this property in 1956, he at-
tempted unsuccessfully to obtain a zoning change that
would enable him to use the house as a funeral home. We
are concerned, however, only with the instant suit for in-
junctive relief which complainants brought after the city
council of the city of Providence had amended the zoning
ordinance of that city so as to include in a C-2 classification,
or a general commercial zone, all the properties abutting
on either side of Broadway between Almy and Courtland
streets. A total of twenty lots was included in this rezoning,
and the action of the council followed the petitioning there-
for by respondent. It is not disputed that the conduct of
a funeral home is a permitted use in a C-2 district.

The complainants contend that the city council acted in
excess of the amendatory power conferred upon it by the
pertinent provisions of the enabling act when it enacted
the amendment to the zoning ordinance here under con-
sideration and that therefore its action was arbitrary and
illegal. However, the trial justice found, in substance, that
the change in zoning which resulted from the amendment
was consistent wth the comprehensive plan for zoning in
the city, was in the public interest, and therefore was with-

in the amendatory authority conferred upon the city council by statute. The complainants argue that it was error for the trial justice to make these findings, contending that they were against the law, the evidence, and the weight thereof.

Because the case is presented to us in this posture, it falls within the purview of our well-established rule that the findings and the decision of a trial justice sitting as a court of equity will not be disturbed by this court on appeal unless they are clearly wrong. *Arlia* v. *Pate,* 85 R. I. 388; *Gilbert* v. *Marquis,* 61 R. I. 302. We are unable to perceive in the circumstances, however, that the trial justice misconstrued the law applicable here or that he overlooked or misconceived any material evidence and are therefore unable to say that his findings were clearly wrong.

A substantial amount of evidence was adduced during the trial below. Among the witnesses testifying were the owners of some of the properties included within the scope of the amendment as well as realtors who were familiar with the area and the properties located therein. The testimony adduced through these witnesses was conflicting as to the character of the area involved, the particular uses that predominate therein, the nature of uses permitted in surrounding areas, the particular uses for which the rezoned properties are suitable, and the effect of the amendment on the value of such properties.

Two of the witnesses were eminently qualified experts in the field of zoning. Much of the testimony of these men was factual in character based upon their observations, but they testified also as to their opinions based on those observations.

Frank H. Malley, who identified himself as the planning director of the city of Providence, testified on behalf of complainants. He stated it to be his opinion that the zoning changes which resulted from the instant amendment were not in accord with the comprehensive plan of zoning in

effect in the city. He testified further that there had been a substantial revision of the zoning ordinance in 1951. In that respect he testified that prior to that revision, all properties abutting on arterial highways within the city were zoned for commercial uses. After the revision of 1951, according to this witness, the properties abutting along such arterial highways within the city were zoned for commercial uses "in large measure."

The other expert witness was Flavel Shurtleff, who testified on behalf of respondents. He stated that he had made extensive personal observations in the area and that in his opinion the area was distinctly commercial in character and that rezoning it in 1951 as a residential area was "wrong zoning." He further testified that all of the properties abutting on Broadway excepting those in a small area in the vicinity of St. Mary's Church properly should be zoned for commercial use for the reason that Broadway is a major arterial highway, heavily traveled, and is an appropriate subject for commercial zoning. He further testified, and we consider this testimony to be significant, that from an examination of the 1951 zoning map it appeared that properties abutting the four major arterial highways extending westward from the center of the city are zoned for commercial uses excepting the portion of Broadway under consideration here.

The trial justice in the decree denying and dismissing the bill of complaint made two specific findings. He found, first, that the enactment of the amendment by the city council constituted "a proper exercise of the police power of the City, and is consistent with, and in harmony with the comprehensive plan of zoning in Providence, and is in the best interests of the public welfare" and, second, that "The action of the City Council does not constitute spot zoning." Implicit in these findings is the conclusion of the trial justice that the city council in enacting the instant amendment did not act in excess of its authority to amend

a zoning ordinance. We are unable to perceive error in such finding of the trial justice and are of the opinion that complainants' contention that the trial justice erred in so finding is without merit.

It is well settled that a local legislature has no authority to enact zoning regulations or to amend existing zoning regulations other than that conferred upon it in the pertinent provisions of the enabling legislation. *R. I. Home Builders, Inc.* v. *Budlong Rose Co.,* 77 R. I. 147. Local legislatures have been expressly granted the power to regulate and restrict the uses to which land may be put within their territorial jurisdiction in G. L. 1956, §45-24-1. Section 45-24-3 of the enabling act sets out certain objectives for which such regulations may be enacted, and these clearly constitute norms or standards limiting the exercise of the power granted in §45-24-1. The provisions of §45-24-3 in substance provide that the regulations "shall be made in accordance with a comprehensive plan" and that they shall be designed to promote the accomplishment of the objectives enumerated therein, all of which relate generally to the public safety, health, and welfare. Further provision is made in that section that the regulations shall be made "with reasonable consideration" to the suitability of the land regulated for particular purposes, the conservation of the value of buildings, and the encouragement of the appropriate use of land.

We are of the opinion that the requirement set out in §45-24-3 that the zoning regulations conform to a comprehensive plan is mandatory and that strict compliance therewith is required of a local legislature when it enacts a zoning ordinance. We construe such provisions in enabling acts so as to give effect to the purpose for which they were enacted. *Buckminster* v. *Zoning Board of Review,* 69 R. I. 396; *Lynch* v. *Borough of Hillsdale,* 136 N.J.L. 129. "The reason for the statutory requirement of a 'comprehensive plan' is to avoid an arbitrary, unreasonable or capricious

exercise of the zoning power, resulting in haphazard or piecemeal zoning." *Bartlett* v. *Township of Middletown,* 51 N. J. Super. 239, 268. Essentially then such provision is designed to reduce the impact of zoning restrictions on the right of an owner to make a free use of his land by barring any radical or impulsive exercise of the power conferred, *Putney* v. *Abington Township,* 176 Pa. Super. 463, and that end will be attained only when the local legislature is held to strict compliance with the pertinent statutory provision.

The remainder of the provisions set out in §45-24-3 establishes the objectives that are to be accomplished through an exercise of the zoning power by a local legislature. It is clear from the language used that they were intended to constitute norms or standards that would guide the local legislature in an exercise of the conferred power. It is obvious that the legislature in prescribing such standards intended to limit the local legislatures to the enactment of zoning regulations that would bear a reasonable relationship to the public interest and thus be within the police power of such local legislatures. These provisions must be considered as directory only and as leaving local legislatures with a broad discretion as to the manner in which such ends shall be accomplished.

In §45-24-5 of the enabling act there is an express grant of a broad amendatory power to the local legislatures. Under this power they may amend or repeal an existing ordinance and in so doing change the regulations contained therein. This section in pertinent part reads: "The city or town council, as the case may be, shall have power, after a public hearing as herein provided, from time to time to amend or repeal any such ordinance and thereby change said regulations or districts * * *." It is well settled that an exercise of the power to amend the provisions of a zoning ordinance, like the power to enact a zoning ordinance, is limited to that conferred in the enabling statute. *R. I.*

*Home Builders, Inc.* v. *Budlong Rose Co.* and *Putney* v. *Abington Township, supra.*

We are of the opinion that those provisions set out in §45-24-3 which limit the power of local legislatures in the enactment of a zoning ordinance apply to an exercise of the amendatory power only to the extent that the change effected by such amendment must be in conformity with the comprehensive plan, because haphazard or improper zoning may result as well from an exercise of the amendatory power as from an exercise of the power to enact an original ordinance. The reason underlying this proposition is well stated in *Putney* v. *Abington Township, supra,* where the Pennsylvania court said at page 472: "We think it clear that the legislature intended * * * to protect property owners in a municipality against arbitrary and impulsive use of the zoning power. Obviously that safeguard is meaningless unless it applies to amendments to a zoning ordinance. It would make little sense to require that certain factors be considered and limit the purposes for which the zoning power can be exercised only with respect to an original zoning ordinance when, by amendments thereto, the ordinance could be completely revised without regard to those factors or purposes."

It is clear that the trial justice made a correct application of the rule that a local legislature, when changing zoning regulations by amending a part of the zoning ordinance, is required to have such change conform to the comprehensive plan of zoning in effect in the community. He found that the change effected by the local legislature was in accord with the comprehensive plan in effect in Providence. There was an abundance of evidence from which these findings properly could be made. There was evidence that the specific area rezoned was commercial in character as well as evidence probative of a policy inherent in the comprehensive plan to zone for commercial use properties abutting on the arterial highways extending out of the city. It

is true that the expert witness Malley testified that the changes accomplished by the amendment were not in accordance with the comprehensive plan, but the trial justice clearly was not bound by the testimony of this witness, however extensive his expertise. *W. C. Viall Dairy, Inc. v. Providence Journal Co.*, 79 R. I. 416.

The complainants further contend that the finding by the trial justice that the amendment was in the public interest was contrary to the weight of the evidence. The trial justice was in effect making a finding that the regulation as amended was of such a nature as to be reasonably related to the public interest and thus constituted a valid exercise of the police power of the city. The pertinent inquiry then is whether the local legislature, when it amended the regulation, did so in appropriate compliance with the directory provisions contained in §45-24-3.

Whatever might be the requirement for such compliance in the enactment of an original zoning ordinance or in the substantial revision of an existing zoning ordinance, it is our opinion that the legislature did not intend that every exercise of the amendatory power conferred by it would necessarily have to be made with rigorous compliance with such directory provisions. The substance of complainants' contention is that every such amendment must affirmatively advance or promote the public interest. With this we do not agree. It is our opinion that compliance with these provisions of §45-24-3 as contemplated by the legislature when it conferred the amendatory power was that the amended regulation, being in accord with the comprehensive plan, be not contrary to the public interest. *Buckminster v. Zoning Board of Review, supra; Ward v. Township of Montgomery*, 28 N. J. 529. This being the view which we take of the law, we are unable to perceive any error in the finding of the trial justice under consideration.

The trial justice also found that the instant amendment did not constitute "spot zoning." It is our opinion that in

so finding the trial justice applied the correct rule of law to the factual situation. It does appear, however, that complainants, particularly during oral argument, took the position that, whether the instant rezoning was spot zoning or not, it did constitute an illegal exercise of the amendatory power. This, they contend, is because the local legislature is without power to amend a zoning ordinance unless there has been a substantial change in condition since the enactment of the original ordinance or the original zoning was erroneous.

The complainants have not directed our attention to any provision of the enabling act which so limits the amendatory power of the local legislature. However, reference was made to *D'Angelo* v. *Knights of Columbus Building Ass'n*, 89 R. I. 76, 151 A.2d 495, wherein this court held that spot zoning, while being prima facie illegal, may in particular circumstances be justified. In that opinion at page 499 this court said: "However, in order to justify the rezoning of a *limited area*, there must have been either a substantial change of conditions in the area since the original comprehensive ordinance or a mistake in the original ordinance." (italics supplied) In that case this court was equating the phrase "limited area" with the phrase "spot zoning," and when the language above quoted is read in the context in which it appears in the opinion, such intention becomes quite clear. The court did not intend in the use of such language to hold that any partial rezoning by a local legislature through the device of amendment would have to be justified by an application of those tests.

There are substantial and persuasive authorities which hold that local legislatures, in the absence of some prohibitory provisions in the enabling act, may amend the zoning regulations whether or not the character of the use of the involved property has changed since the enactment of the original ordinance. The theory underlying what seems to be the sound principle involved here is that it is within the

concept of zoning to permit a city council to provide for the public welfare in the future where such is reasonable. *Lamarre* v. *Commissioner of Public Works,* 324 Mass. 542.

A similar situation arose out of language used by the Connecticut court in *Parsons* v. *Town of Wethersfield,* 135 Conn. 24, where that court said at page 30: "* * * ordinarily changes in zone should not be made unless new conditions have arisen or there have been substantial changes in the area * * *." In a later case of *Winslow* v. *Zoning Board,* 143 Conn. 381, the court, in referring to the language in the *Parsons* case above quoted, said at page 390: "We did not intend thereby to place the legislative body of a municipality in a strait jacket. The considerations ordinarily precluding zoning boards of appeal from reversing themselves unless conditions have changed do not necessarily apply to the law-making agency of a community."

It is to be further noted that in the enabling act the amendatory power is conferred in broad terms and without express limitation. Thereunder a local legislature is empowered to amend or repeal the regulations "from time to time." In *Shemwell* v. *Speck,* Ky., 265 S.W.2d 468, the Kentucky court considered the scope of the amendatory power conferred in a statute containing a similar provision and said at page 469: "One contention of the appellants seems to be that a zoning ordinance can never be changed unless there has been a change of conditions since the adoption of the ordinance. * * * The statute * * * authorizes amendments or changes 'from time to time' with no requirement of a change of conditions. We think that a reconsideration or re-examination of the conditions in any area of the city may justify a change in the zoning ordinance as it affects that area, even though there has been no change of conditions in the area since the adoption of the original ordinance. The cases in which the courts have said that there must be a showing of a change of conditions are cases. in which one piece of property, in a particular zoning dis-

trict, has been singled out and reclassified without there being any apparent basis for distinguishing it from the remainder of the district. * * * In other words, it is only in the 'spot zoning' cases that the question of a change of conditions is involved."

It is our opinion then that the rule stated in *D'Angelo* v. *Knights of Columbus Building Ass'n, supra,* is that "spot zoning," while presumptively illegal, may constitute a valid exercise of the amendatory power when there is a substantial change of conditions in the involved area or where the original zoning was erroneous. But an amendment to a zoning ordinance that changes a zoning regulation that is not spot zoning as defined in the *D'Angelo* case, *supra,* will not be held as an invalid exercise of the amendatory power of the local legislature only because a change of condition or a prior zoning error has not been shown.

There remain for our consideration a substantial number of reasons of appeal that are based upon exceptions taken by the complainants to certain of the evidentiary rulings made by the trial justice. We have examined these rulings, and when they are scrutinized in the light of the issue in the case, that is, whether the city council in enacting the amendment exceeded the amendatory power conferred by the enabling act, it becomes clear that the proffered evidence was of remote materiality to the issue, if material at all. In such circumstance we are constrained to conclude that these exclusionary rulings were without any demonstrable prejudicial effect and for that reason they are overruled.

The appeal of the complainants is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Haig Barsamian, Angelo Cianciarulo,* for complainants.

*Harry Goldstein,* Assistant City Solicitor, *John P. Bourcier,* for respondent Anthony Tarro.