Vincent J. MESOLELLA

v.

CITY OF PROVIDENCE et al.

No. 79–323–Appeal.

Supreme Court of Rhode Island.

Jan. 20, 1982.

Marcaccio & Marcaccio, Thomas L. Marcaccio, Jr., Providence, for plaintiff.

John Rotondi, Jr., Deputy City Sol., Frank Mastrati, Jr., Asst. City Sol., Providence, for defendants.

## OPINION

MURRAY, Justice.

The plaintiff brought this action in the Superior Court seeking to declare null and void an amendment to the zoning ordinances of the city of Providence and to obtain a court order directing the city building inspector to issue a permit allowing the plaintiff to proceed with his proposed construction project. A justice of the Superior Court heard the matter and entered judgment substantially in the form requested by the plaintiff. This case is before the court on the appeal of the defendants from the judgment of the Superior Court.

The essential facts are as follows: plaintiff Vincent J. Mesolella is the record owner of lots No. 2 and 31 of Assesor's Plat No. 111 in the city of Providence. The lots abut Plainfield Street and consist of 115,164 square feet of property. Mesolella purchased the property on July 18, 1968, and he obtained total ownership in March of 1970. The defendants are the city of Providence, the treasurer of the city, the mayor of the city, and the acting director of the department of buildings who also serves as the building inspector for the city.

The plaintiff and his son are associated in a business venture known as Hillside Associates. They had planned to build forty-two units of section VIII-assisted family housing on the Plainfield Street property. The units were to be constructed in two structures with twenty-four units in one and eighteen units in the other. The parties agreed to the fact that the proposed project was generally in compliance with the R–3 zoning that was in effect prior to and on the date the property was purchased. The R–3 zoning continued in effect until August 10, 1978, when the Providence City Council passed a zoning amendment that changed the zoning for plaintiff's property and a few surrounding parcels to R–1 zoning. Multifamily housing is not a permitted use in an R–1 zone.

Prior to the passage of the zoning amendment, plaintiff had taken a number of steps in furtherance of the project. The parties agreed that $88,592.50 had been spent by plaintiff in preparation for the project; the amount included, inter alia, the price of the land, the expense of certain preliminary studies, and certain fees paid in an attempt to secure financing. In addition, plaintiff's son, who acts as the principal representative of Hillside, had made an application to the Rhode Island Housing and Mortgage Finance Corporation (R.I.H.M.F.C.) to secure financing for the assisted family housing. The chief development officer for R.I.H.M. F.C., in a reply letter dated September 29, 1977, expressed the opinion that, based

upon the information provided to him, the project was feasible. The letter was not to be construed as a commitment for funding. Also, plaintiff's son had filed an application for a building permit on May 8, 1978, and approximately two months earlier a copy of the building plans had been submitted to the building inspector.

The proposed construction project created quite an uproar in the surrounding neighborhood, the repercussions of which could be seen and heard at the 1025 Club located near the proposed site. On March 3, 1978, a group calling itself the "Citizens of the Neutaconkanout Hill, Silver Lake, Annex Area" met at the 1025 Club to discuss "the construction of Title VIII Low Income Multiple Dwellings [in the] Plainfield Street Area." To state the obvious, not one person at the "public hearing" supported the Hillside development. The record reveals that local public office holders promised to do everything they could to prevent the development.

The opposition to the Hillside construction basically attacked in two directions: the financing and the zoning laws. On the one front, a letter was addressed to the executive director of R.I.H.M.F.C., enclosing the minutes of the 1025 Club meeting, from a reading of which minutes it was obvious that the local citizenry did not want the proposed project. On the other front, a local councilman introduced an ordinance that would change plaintiff's land and a few surrounding parcels from R–3 to R–1. The second approach ultimately proved successful.

The ordinance, designated as 1978–21, which barred plaintiff from proceeding with his project, was passed by the city council and signed into law on August 10, 1978. Both parties agree that such ordinance was passed pursuant to the applicable sections of the General Laws and the city charter; that is, notice was properly given and public hearings were held on May 10, 1978, and June 12, 1978. It should be mentioned that plaintiff appeared at the May 10, 1978, hearing, through counsel, and offered evidence of the substantial costs incurred in preparation for the project.

The cause was submitted to the trial justice on an agreed statement of facts along with a number of exhibits referred to in the agreed statement. The trial justice was aided by additional testimony and exhibits presented by both parties at a hearing on January 9, 1979. The plaintiff initially presented his son, who essentially substantiated some of the happenings of the previous couple of years. The plaintiff also presented Mr. Herbert Y. Mason, a realtor and real estate appraiser for the preceding twenty-eight years, as their expert witness. Although Mr. Mason admitted to no particular background as a planner, he did state that he had background in the application of planning and zoning. Mr. Mason testified that fifty-seven units would be the maximum number allowable under R–3 zoning, but because of the fact that the property contained large, high outcroppings of rock forty-two units would be the optimum number. Yet, since the zoning was in fact changed to R–1, the maximum number of single-family houses that could be built on the property would be two or three, depending upon whether or not an exception was obtained. He believed that the planned project would pose no danger to the public health, safety, and welfare of the area. In regard to the amendment in question, he testified that he "could not find any reason in the comprehensive plan, or the consideration of comprehensive planning" for the change. He also testified that he did not believe the amendment would promote the public health, safety, and welfare of the area. Because of the fact that all of the other property affected by the zoning amendment had already been developed, in reality the only property affected was plaintiff's. In fact, Mr. Mason believed that the city had no master plan. At the planning office, Mr. Mason said, he was merely shown some brochures that, in his opinion, did not constitute a master plan. His final conclusion regarding the amend-

ment in question was that there was "no formula, scheme or plan followed in this change, and that it was changed specifically to eliminate a multi-family use on those two particular lots * * *."

The defendants presented only one witness, Mr. George Turlo, the supervisor for current planning for the Providence Department of Planning and Urban Development. He testified that the city did have a master plan and that although this plan had not been adopted by the city council, it had been adopted by the city planning commission in 1964. He also stated that the plan is a mere guideline that need not be followed by the city council, nonetheless it is strictly adhered to by the department of planning and urban development. He was also of the opinion that the R–1 zone, rather than the R–3 zone, would be more beneficial to the public health, safety, and welfare of the area of the proposed site.

In the judgment entered on the 9th day of February 1979, the trial justice ruled that the amendment was null and void as it related to plaintiff's property, and he ordered the city building inspector to issue the permit. He also made certain findings: that plaintiff incurred substantial obligations in preparation for the Hillside development; that the proposed project was a suitable use for the subject property; that there was no evidence offered that convinced him that the multifamily dwelling, as designed, would be detrimental to the public health, safety, and welfare; that the amendment in question "was passed to directly prevent plaintiff's project;" and that the proposed project was the most suitable

use because of the topography of the parcel and the character of the area.

In a written decision, the trial justice explained his reasons for declaring the amendment null and void. The trial justice relied heavily upon the equitable principles enunciated in *Shalvey v. Zoning Board of Review of Warwick*, 99 R.I. 692, 210 A.2d 589 (1965); and *Tantimonaco v. Zoning Board of Review of Johnston*, 102 R.I. 594, 232 A.2d 385 (1967). In reaching his conclusion, the trial justice applied the rule of *Shalvey* and *Tantimonaco* to the present case. The rule requires that a subsequent amendment to a zoning ordinance cannot impair rights existing under a previous ordinance when the holder of such rights has incurred substantial obligations in good-faith reliance upon the previous ordinance. Relying upon our holding in *Tantimonaco*, the trial justice found that plaintiff was not barred from relief because of his failure to possess a permit.

In reviewing the judgment of the trial justice, we are of the opinion that it is correct. We therefore affirm the judgment of the lower court. We do not however, rely upon the same case law as that cited by the lower court.[1]

In this jurisdiction it is well established that we are allowed to sustain a correct judgment even if it was reached through faulty reasoning or mistake of law. *Berberian v. Rhode Island Bar Association*, R.I., 424 A.2d 1072 (1981); *Souza v. O'Hara*, R.I., 395 A.2d 1060 (1978).

Amendments to the zoning ordinances, like other legislative acts, are pre-

---

1. Although we can readily see the ease with which the facts of the present case fit within the *Shalvey-Tantimonaco* rule, we prefer not to apply the rule in the present case. The rule was developed through review of the actions of local zoning boards, whereas this action was brought in the Superior Court to review the actions of a city council. The actions of a zoning board are generally quasi-judicial, but the actions of a city council in amending a zoning ordinance are purely legislative. *R.I. Home Builders, Inc. v. Hunt*, 74 R.I. 255, 60

A.2d 496 (1948). The direct suit in equity, the method employed by plaintiff, is clearly a long-established remedy in this jurisdiction for those who are injured or substantially threatened with injury by the enforcement of an allegedly illegal amendment to the zoning ordinances. *Town & Country Mobile Homes, Inc. v. Zoning Board of Review of Pawtucket*, 91 R.I. 464, 165 A.2d 510 (1960); *R.I. Home Builders, Inc. v. Hunt, supra*. As will soon be seen, these equitable proceedings have developed their own substantial body of case law.

sumed valid. *Carpionato v. Town Council of North Providence*, 104 R.I. 490, 244 A.2d 861 (1968). The sole limitation upon the broad power of a local legislature to amend its zoning ordinances is contained in the enabling act that permits legislatures to enact and amend zoning ordinances. *Sweetman v. Town of Cumberland*, 117 R.I. 134, 144, 364 A.2d 1277, 1285 (1976). General Laws 1956 (1980 Reenactment) § 45–24–3 [2] requires that zoning regulations be made in accordance with the local "comprehensive plan." We have found this requirement to be mandatory; local legislatures must strictly comply with the mandate. *Cianciarulo v. Tarro*, 92 R.I. 352, 358, 168 A.2d 719, 722 (1961). The purpose of the comprehensive-plan requirement is "*to reduce the impact of zoning restrictions on the right of an owner to make a free use of his land by barring any radical or impulsive exercise*" of the amendatory power. *Id.* at 359, 168 A.2d at 723. The comprehensive-plan requirement does not mean that zoning amendments must conform to a municipality's master plan. *Sweetman v. Town of Cumberland*, 117 R.I. at 147–48, 364 A.2d at 1287.

The phrase "comprehensive plan" was first defined in *Hadley v. Harold Realty Co.*, 97 R.I. 403, 198 A.2d 149 (1964). The court stated that the Legislature

"intended to use [the phrase] in the context of the zoning power which is valid only as an exercise of the police power of the state. In such context a 'comprehensive plan' must of necessity be a scheme or formula of zoning that reasonably relates the regulation and restriction of land uses and the establishment of districts therefor to the health, safety, and welfare of the public and thus to the police power." *Id.* at 408, 198 A.2d at 152.

If the amendment reasonably relates to the public health, safety, or welfare, then the comprehensive plan remains intact and the amendment is valid. *Willey v. Town Council of Barrington*, 106 R.I. 544, 559, 261 A.2d 627, 635 (1970); *Hadley v. Harold Realty Co.*, 97 R.I. at 409, 198 A.2d at 152.

The defendants argue that the trial justice was clearly wrong in finding that the zoning amendment was not related to the public health, safety, or welfare. The defendants argue that the trial justice improperly placed the burden upon the municipality to prove the validity of a zoning ordinance. We reject this argument as well as the other argument of defendants.[3]

The defendants correctly state that the party challenging a zoning amendment has the burden of proving that the so-called comprehensive plan has not been followed. *Willey v. Town Council of Barrington*, 106 R.I. at 560, 261 A.2d at 635. The following language, from the trial justice's decision, is quoted by defendants as evidence of the improper burden they had to overcome: "There was no evidence offered which convinced the Court, that *the multi-family*

---

**2.** General Laws 1956 (1980 Reenactment) § 45–24–3 provides:

"General purposes of ordinances.—Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote the public health and the general welfare; to provide adequate light and air; to prevent the *overcrowding of land; to avoid undue concentration* of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserv- ing the value of buildings and encouraging the most appropriate use of land throughout such town or municipality."

**3.** In their other argument, defendants contend that the trial justice clearly erred in finding that plaintiff incurred substantial costs in good-faith reliance upon the R–3 zoning. They argue that the finding was not supported by the evidence. Because of the fact that the trial justice relied upon the *Shalvey-Tantimonaco* rule, he was required to make the factual determination. Since we have decided not to apply the rule (See footnote 1), we shall not review the finding.

*dwelling, as designed*, would in any way be detrimental to the public health, safety, or welfare." (Emphasis added.) It is obvious from the language quoted that the trial justice was referring to the Hillside project and not to the zoning amendment in question. We therefore cannot conclude that the trial justice improperly placed the burden upon defendants to prove the amendment valid.

Having thus rejected the arguments of defendants, we shall proceed to what we conceive to be the issue in this case, namely, whether the amendment in question is in accordance with the city of Providence's comprehensive plan. Although the trial justice did not specifically find that the amendment in question violated the comprehensive plan, implicit in his findings is the determination that the amendment was not adopted pursuant to the comprehensive plan. In particular, we deem significant the finding "that the amendment in question * * * was passed to directly prevent plaintiff's project."

In *Town & Country Mobile Homes, Inc. v. Inspector of Buildings*, 93 R.I. 383, 386–87, 175 A.2d 556, 557–58 (1961), we also held that implicit in a trial justice's finding that "[an] amendment was a capricious and unreasonable restriction of complainant's property" was the finding that the amendment in question "was not adopted in pursuance of the comprehensive plan * * *." The court, nine years later in *Willey v. Town Council of Barrington, supra*, had occasion to explain the *Town & Country Mobile Homes, Inc.* situation in the following manner:

> "[A]fter a hearing on the merits the trial justice found that the complainant had satisfied him that the amendment was not justified; in other words, the complainant's evidence overcame the presumption of validity and established to the satisfaction of the trial justice that the amendment was not adopted pursuant to the city's comprehensive plan." *Willey*, 106 R.I. at 561, 261 A.2d at 636.

We adopt the above language to define the trial court proceedings in the present case.

█ Our final task is to determine if the evidence supports the relevant findings of the trial justice. The findings of fact of a trial justice will not be disturbed unless clearly wrong. *Toole v. May-Day Realty Corp.*, 101 R.I. 379, 385, 223 A.2d 545, 548 (1966); *Town & Country Mobile Homes, Inc.*, 93 R.I. at 387, 175 A.2d at 558. After a careful review of the record, including the agreed statement of facts, the exhibits, and the testimony presented, we are of the opinion that the trial justice was not clearly wrong.

The defendants' appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.