Margaret **LAW**

v.

**LAW TRUCKING CO.**

**No. 82–365–Appeal.**

Supreme Court of Rhode Island.

March 12, 1985.

James Cardono, Pawtucket, for petitioner.

Marc B. Gursky, Bruce I. Sondler, Lovett, Morgera, Schrefrin & Gallogly, Ltd., Providence, Thomas F. Almeida, Town Sol., for Town of Cumberland, Cumberland, for respondent.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal from a petition by the permanent receiver of Law Trucking Company seeking instructions whether or not to pay claims filed with the receiver by the town of Cumberland and by five employees. The town of Cumberland seeks payment of back taxes for the years 1977–81 arising from property—trucks, trailers, and other motor vehicles—reportedly garaged in Cumberland but actually garaged since 1960 in the town of Lincoln. In addition, five former Law Trucking employees claim back wages and seek priority to the extent permitted by the United States Bankruptcy Code, 11 U.S.C.A. § 507(a)(3) and (4) (1979).[1] The matter was heard by a trial justice of the Superior Court sitting without a jury, who allowed the Cumberland claim and disallowed the employees' wage claim. The receiver and the employees appeal, respectively, from the adverse findings.

The two issues before us are: (1) whether the trial justice erred in allowing the tax claim filed by the town of Cumberland and (2) whether the trial justice erred in refusing to permit the wage claims advanced by the five Law Trucking employees.

We turn first to the allowance of the Cumberland tax claim. Neither side disputes the amount allegedly due. The receiver simply asserts that because the trucks and trailers that were subject to taxation were not garaged in the town of Cumberland, no tax could be levied upon such property pursuant to G.L.1956 (1980 Reenactment) § 44–34–4.[2] The town of Cumberland contends that because the company represented its vehicles as situated in Cumberland, it should not now be able to come forward and repudiate the tax situs originally claimed.

Prior to January 1, 1960, at which time the vehicles were relocated to a garage in Lincoln, the company's tractors and trailers were duly assessed and taxed in Cumberland. Upon relocation, no notification of the change in property situs was given either to the Registry of Motor Vehicles or to the assessor's office of either town. Taxes were levied annually upon the absent property by the town of Cumberland, and the company continued to make payments up until the first quarter of 1979.

1. 11 U.S.C.A. § 507(a)(3) and (4) (1979) provides:

"(a) The following expenses and claims have priority in the following order:

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $2,000; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan."

2. General Laws 1956 (1980 Reenactment) § 44–34–4 states in pertinent part:

"**Vehicle and trailer tax situs—Apportionment for interstate fleets.**—Tax situs of each such vehicle or trailer shall be in the town or city of permanent abode of the owner at the end of the calendar year of proration if an individual, or at the principal place of business in this state, if a partnership, corporation, joint stock company or association, except that if a vehicle or trailer is customarily kept in some other town or city, then tax situs will be in that municipality."

We note that the company neither notified the Registry of Motor Vehicles in the town of Lincoln of the change in vehicles' situs nor challenged the right of the town of Cumberland to tax this property. The case before us is not an instance of double taxation. The company represented a certain set of facts to both the town of Cumberland and the Registry of Motor Vehicles; it should not be permitted to deny this representation at a later, more convenient time. General Laws 1956 (1980 Reenactment) § 44–5–26 establishes a remedy for persons aggrieved by a decision of the taxing authority.[3] The company failed to utilize this remedy, and as § 44–5–27 emphasizes, it is the exclusive remedy for tax grievances.[4]

We detect no error in the findings of the trial justice. If the company hoped to avail itself of the Lincoln tax situs, then it was under an affirmative duty to notify either the Registry of Motor Vehicles or the Lincoln assessor's office of the new garage location.

The employees' wage claim presents a more difficult issue. The company evidently had fallen upon hard times, and in hopes of surmounting the financial difficulty, Robert Law, president of Law Trucking, approached the drivers and asked for certain wage concessions that he would plow back into the company with the aim of keeping it afloat. In return, he promised that if the company made a profit at the end of the year, the employees would be entitled to reimbursement for their "loan."

At the time of this agreement, the drivers were working under a union contract that paid them $12.71 for straight time and $19.06 for overtime, based upon a forty-hour week. Law asked that they accept $10 an hour for straight time and $15 an hour for overtime. Only five of the twelve drivers agreed to accept the wage-cut proposal. The acceptors then signed an agreement to this effect.[5]

The employees contend that the terms of a collective-bargaining agreement cannot be altered individually to conflict with the terms of the contract originally entered into by the employer and the union representatives. This issue, however, was not raised below and we will not entertain it now for the first time. *Fiske v. MacGregor, Division of Brunswick*, R.I., 464 A.2d 719, 726 (1983).

In addition, employees contend that because there was no mutuality of obligation in the alleged agreement, it should fail. The trial justice found that testimony elicited at the hearing provides ample evidence of mutual obligation. Such evidence consisted of the following: Law promised to keep the company open for a year in exchange for the loans; the bookkeeper testified that the company was in serious debt at that time; and because employees were

---

3. General Laws 1956 (1980 Reenactment) § 44–5–26 provides in pertinent part:

"Any person aggrieved on any ground whatsoever by any assessment of taxes against him in any city or town, may within three (3) months after the last day appointed for the payment without penalty of such tax, or the first instalment thereof, if such tax be payable in instalments, file a petition in the superior court for the county in which such city or town lies for relief from such assessment * * and his remedy shall be limited to a review of the assessment on such real estate or to relief with respect to such illegal tax as the case may be."

4. Section 44–5–27 reads in pertinent part:

"The remedy provided in § 44–5–26 shall be exclusive if the taxpayer owned or possessed any ratable estate at all, except that in a proper case the taxpayer may invoke the equity jurisdiction of the superior court provided that complaint if filed within three (3) months after the last day appointed for the payment without penalty of such tax, or the first instalment thereof, if such tax be payable in instalments. A taxpayer alleging an illegal or void tax assessment against him shall be confined to the remedies provided by § 44–5–26."

5. The text of the agreement signed by the employees:

"I will loan to Law Trucking Company without interest, my earnings over $10.00 per hour straight time, over $15.00 per hour of overtime, and the 5 personal holidays due in 1981.

"This money is refundable to me at the end of the year in the event of a company profit."

aware of the financial difficulty that the company was facing, the trial justice could have easily inferred that the employees understood the risk involved. We find no error in the trial justice's conclusion that mutuality of obligation sufficient to support an enforceable contract was present.

■ Finally, we examine the employees' claim for priority status under the Bankruptcy Code [6] or, in the alternative, under G.L.1956 (1979 Reenactment) § 28–14–6.1.[7] Priority status under either statute operates upon the premise that the moneys withheld constitutes wages. If the moneys withheld did not constitute wages, we need not proceed to the issues of statutory application and construction.

The trial justice found that the moneys withheld were loans and not wages. There is ample evidence in the record to support this finding, which is further buttressed by reference to the written agreement signed by the employees. The language in the agreement refers to a loan to the company. Moreover, the moneys withheld were not treated as wages by the bookkeeper; no taxes, and no social security or disability deductions were withheld from sums earned above the wage-rate ceiling set forth in the new agreement.

In our review of these findings we detect neither error nor misconstruction of evidence; therefore, we will not disturb the findings of the trial justice. *Mesolella v. City of Providence,* R.I., 439 A.2d 1370, 1375 (1982).

6. See note 1.

7. General Laws 1956 (1979 Reenactment) § 28–14–6.1 states:

"**Priority of wages due from employer in receivership or insolvency proceedings.**—In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this state, including receivership, assignment for benefit of creditors, adjudicated insolvency, composition or similar proceeding, the wages or compensation earned and unpaid not exceeding three hundred dollars ($300) to each wage earner earned within three (3) months of the com-

The appeals are denied and dismissed, the judgments appealed from are affirmed and this case is remanded to the Superior Court.

mencement of the proceeding shall have the same priority in advance of payment of dividends to creditors as is given to wages under the federal bankruptcy act and shall be paid as soon as sufficient sums are available, to employees entitled to the same according to the records of the employer; said employees being relieved of the necessity of filing claims with the receiver, assignee or trustee unless the amount payable as shown on the books of the employer is not acceptable to any employee, in which case, such employee shall file his claim in the same manner as other creditors of the employer."