[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court pursuant to an appeal of the Cumberland Town Council's decision to amend its zoning ordinance.
In April of 1989, the Cumberland Town Council granted a petition to amend a zoning ordinance pertaining to land formally zoned as Agricultural to an Industrial Zone. Subsequent to the plaintiff's complaint, a motion to dismiss Counts I and II for failure to state a claim upon which relief could be granted was submitted. In essence, the defendants claim that the plaintiffs should have proceeded in equity for review of a legislative act of a town council and not under R.I.G.L. § 45-5-16 and § 45-5-17. (1988 Reenactment) Section 45-5-16 does not provide for a right of appeal but merely provides a time limitation for an appeal if such an appeal is expressly provided for elsewhere. Order of St.Benedict v. Town Council, 125 A.2d 150 (R.I. 1956). Secondly, the defendant's seek to dismiss Count II of the complaint which purports to invoke the appeal provisions of the Rhode Island Administrative Procedures Act, R.I.G.L. § 42-35-15 (1988 Reenactment). However, R.I.G.L. § 42-35-1 clearly states that an administrative agency, in contrast to the legislature and courts, is a governmental entity which either makes rules or determines contested cases. Thus, the plaintiff's appeal pursuant to this statute is inappropriate because when enacting an amendment to the zoning ordinances, a town council is acting in a purely legislative manner. Alianiello v. Town Council, 117 A.2d 233
(R.I. 1955).
This Court may undoubtedly invoke its equity jurisdiction when a party seeks to challenge the legality of an enacted amendment to a zoning ordinance. Consolidated Realty Corp. v.Town Council, 513 A.2d 1 (R.I. 1986); Sweetman v. Town ofCumberland, 364 A.2d 1277 (R.I. 1976). Moreover, a direct suit in equity is a "long-established remedy in this jurisdiction" for those who are injured or threatened by the possibility of injury by the enforcement of an allegedly unlawful amendment to a zoning ordinance. Consolidated Realty, 513 A.2d at 3; Mesolella v.City of Providence, 439 A.2d 1370, 1373 (R.I. 1982). The standard that this Court must adhere to and the difficult burden of the party challenging the amendment may be stated as follows:
 "A court will not weigh the policy or wisdom underlying the enactment of an amendment but will strike down an amendment only if it bears no reasonable relationship to the public health, safety, or welfare and is not in keeping with a comprehensive plan or is an arbitrary or discriminatory exercise of power." Consolidated Realty, 513 A.2d at 3; Sweetman, 364 A.2d at 1285-86."
This Court must review this appeal as a court sitting in equity and must abide by the above standard to determine whether the plaintiffs have met their burden of overcoming the presumption of validity to the actions of the town council of the town of Cumberland.
Essentially, the factual background and travel of the case is as follows. A petition was filed with the town council by one of the defendants, Silver Hill Development Associates ("Silver Hill") seeking to rezone approximately 230 acres of land located in Cumberland, adjacent to the Woonsocket town line. Specifically the land is designated as Lots 1, 2, 5 and 6 on Assessor's Plat 51 and Lot 15 on Assessor's Plat 52 in the Town of Cumberland. The property abuts an existing industrial park (Highland I), Elder Ballou Meeting House Road, and West Wrentham Road. Silver Hill entered into an agreement with the defendants, Blackstone Valley Development Foundation ("BVDF") and the Woonsocket Industrial Development Corporation ("WIDC"), seeking to develop approximately 27 sites for light industrial and office uses (Highland II). Of these 230, acres 90 are wetlands and cannot be developed. Additionally, BVDF and WIDC submitted proposed restrictive covenants preserving 50 additional acres for conservation. Prior to the granting of the defendant's petition, the property had been zoned for agricultural uses only.
Various studies and hearings began to take place as early as November of 1988. The transcripts of the town council's hearings, along with numerous exhibits, impact studies, and other materials, compromise a vast accumulation of the whole record. Interest among many citizens and abutters of the proposed project was immense; namely a petition signed by 892 objectors and approximately 49 Landowner(s) Protests' was signed pursuant to R.I.G.L. § 45-24-5. The main concerns of these citizens and landowners involved the possible devaluation of their properties, an increase in traffic conditions, conservation concerns, sewer and water supply issues, whether the amendment constituted unlawful "spot zoning", and whether the project would generate a true tax benefit.
The Cumberland Town Council addressed all of these concerns during the November 1988, March 15 and April 5, 1939 hearings. Briefly, the relevant testimony and evidence submitted to the town council was as follows. BVDF and WIDC are both nonprofit development corporations with the objective to create jobs in northern Rhode Island and to promote high quality economic development in the region. BVDF and WIDC engaged a consulting firm to conduct an extensive Development Impact Study concerning the proposed project. The entire report was introduced at the hearing in addition to the testimony of the expert who prepared the report in support of the petition. The study projects that over 4,400 jobs will be created over a ten-year period and approximately $10,000,000 in tax revenue will be generated over a ten-year period. Also, a detailed Traffic Impact and Access Study was submitted to the council in addition to the testimony of the engineer who conducted the study. Overall, the greatest impact would be along West Wrentham Road, the area which fostered the most concern amongst the abutters and council members.
The director of the Cumberland Planning Department testified in support of the Petition and submitted a report to the town council. The Director's testimony and report concluded that the proposed development is consistent with the objectives of the Economic Development Commission, the long-term needs of Cumberland and the Blackstone River Valley, and clearly accomplishes an environmentally sensitive design which not only addresses the wetlands and soils, but also the citizens' responses to the visual impacts and proximity to their property lines. In response to these concerns and conclusions, the town council placed restrictions requiring the placement of pollution sensors in the wetlands, 200 foot natural buffers from the private property lines, and the appointment of the town's Conservation Commission as the agency responsible for overseeing and protecting the environmentally sensitive land throughout development.
A major concern and condition of granting the Petition was contingent upon the final approval of the City of Woonsocket to extend water and sewer connections to the proposed Highland Park II area. Another important issue was the location of the public drinking watersned and flood zone(s) which are located outside of the Highland Park II proposal.
A landscape architect and real estate expert both testified negatively against the petition. The landscape expert testified that the Highland Park II proposal, from a planning perspective, is not harmonious with the character of the area and existing residential uses. Thus, the project will hinder the health, safety, and welfare of the people in regard to neighborhood harmony and additionally, constitutes "spot zoning." Lastly, the real estate expert's testimony concluded that the project will devalue the surrounding real estate from five to thirty percent in the surrounding area.
The record discloses that the town of Cumberland does not have a Comprehensive Plan at the present time. Therefore, this Court must look to the town's zoning map and ordinances to determine if the recent amendment to Lots 1, 2, 5, and 6 of Assessors Plat #51 and Lot 15 of Assessors Plat #52 is valid.Camara v. City of Warwick, 358 A.2d 23, 30 (R.I. 1976). The Cumberland Town Council, by a unanimous vote, adopted the amendment contingent upon the following covenants and restrictions which are summarized as follows:
 1. two hundred foot buffers must be placed along certain adjacent property lines;
 2. pollution sensors must be installed in the wetlands;
 3. the Conservation Commission shall be appointed to protect and oversee all environmentally sensitive lands;
 4. Lot 2 of Assessor's Plat 51 shall be excluded from the zone change as voluntarily requested by the Petitioners;
 5. approval must be obtained from the City of Woonsocket for water and sewer connections;
 6. Consultation with the Cumberland Traffic Safety Commission and approval by the Cumberland Planning Board of the roadway being as narrow as possible after the truck turn around leading to West Wrentham Road; and
 7. the proposed declarations and covenants submitted by the Petitioner are included.
This Court must determine whether the amendment bears a reasonable relationship to the public health, safety, and welfare in order to determine the enactment's validity. Mesolella v.City of Providence, 439 A.2d 1370, 1374 (R.I. 1982). The phrase, "comprehensive plan," was first defined in Hadley v. HaroldRealty Co., 198 A.2d 149, 152 (R.I. 1964) when our Supreme Court stated that the legislature intended to use the phrase:
 ". . . in the context of the zoning power which is valid only as an exercise of the police power of the state. In such context a `comprehensive plan' must of necessity be a scheme or formula of zoning that reasonably relates the regulation and restriction of land uses . . . to the health, safety, and welfare of the public and thus to the police power." Cited from Mesolella, 439 A.2d at 1374.
Moreover, this Court must begin its analysis by presuming that the amendment is valid and the burden is upon the plaintiffs to convince this Court that the amendment bears no reasonable relationship to the health, safety, and welfare of the public.Sweetman v. Town of Cumberland, 364 A.2d at 1285, 1286;Mesolella, 439 A.2d at 1373, 1374. Specifically, R.I.G.L. §45-24-3 states:
 "Regulations shall be made in accordance with a comprehensive plan prepared and adopted in accordance with chapter 22 of this title and designed to lessen congestion in the streets; to secure safety from fire, flood, panic, and other dangers; to promote the public health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. The regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the town of municipality."
The plaintiff's argument appears to rely solely upon the assertion that the amendment to the zoning ordinance, in effect, constitutes unlawful spot zoning. In the case of Carpionato v.Town Council of North Providence, 244 A.2d 861, 863 (R.I. 1968), our Supreme Court defined the term as follows:
 "The phrase "spot zoning" is a descriptive term and not a word of art. There is valid spot zoning and invalid spot zoning. The fact that a small portion of land is involved in a legislative action does not make it ipso facto illegal spot zoning. The crucial test for determining if an amendment to a zoning ordinance constitutes illegal spot zoning depends upon whether its enactment violates a municipality's comprehensive plan."
The validity of an amendment must be determined on a case by case analysis and this Court's initial inquiry is not whether the amendment constitutes illegal spot zoning, but rather whether the extension of an existing industrial zone from the Woonsocket border into an agricultural zone abutted by residential districts bears a reasonable relationship to the public health, safety, or welfare so as to justify the council's exercise of the police power. Willey v. Town Council of Town of Barrington,261 A.2d 627, 635 (R.I. 1970).
This Court finds that the presumption of validity attached to the ordinance has not been overcome and that the Cumberland Town Council's actions do not constitute unlawful spot zoning. The actions of the council and passage of the amendment were the product of intense lengthy hearings and consideration of abundant sources of testimony, expertise, and exhibits. The ultimate decision of the Council clearly rested upon the concerns for the public's health, safety, and welfare. To satisfy all of the needs, concerns, and requests of the parties and citizens involved here would be an impossible task which is not this Court's responsibility. Instead, we must be satisfied that the actions of the Council abide by the mandates of the law.
The proposed development is environmentally sensitive. Over fifty percent of the acreage (140 acres) will remain as untouched wetlands and conservation land. The stringent restrictions placed upon the amendment will ensure that development is limited and that the impact on the public's welfare and safety will be minimal. Extensive expert testimony and evidence were considered to ensure that the traffic impact would be restricted and the public protected in all possible respects. Moreover, the condition to obtain water and sewer services from the City of Woonsocket relieves the Town of Cumberland from an added burden being imposed upon the public. The economic advantages to the people may far outweigh any disadvantages. The proposed development may well create approximately 5,000 new jobs and increase the tax revenue substantially. In such difficult economic times, these advantages are desirable to further the public's welfare. The petitioners and the council have responded to the concerns of the landowners who abut the Highland Park II area by requiring 200 foot buffer zones to minimize visual aesthetic concerns and to preserve the natural aesthetic beauty of the land. Lastly, the town of Cumberland has consciously responded to a decision of balancing between a preference to maintain a future residential zone versus a light industrial zone on the perhaps sole remaining land compatible for industrial development.
For all of the reasons set forth above, the Town Council of the Town of Cumberland's enactment amending the zoning ordinance with restrictions and covenants is upheld and the plaintiff's appeal is denied.
Counsel shall prepare the appropriate order for entry.