[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Jeff Anthony Properties ("Appellant" or "Jeff Anthony"), appeals the decision of the Town of North Providence, Zoning Board of Review ("Zoning Board") denying its application for a special use permit. Neighboring property owners, Maria and Robert P. Barbato ("Barbatos"), have intervened and oppose Jeff Anthony's appeal. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For reasons set forth below, Jeff Anthony's appeal is denied, and the decision of the Zoning Board of Review of the Town of North Providence is affirmed.
 BACKGROUND
Jeff Anthony owns property located at 1385 Mineral Spring Avenue, North Providence, Rhode Island. The parcel is identified as Assessor's Plat 23D, Lot 796 and is located at the corner of Mineral Spring Avenue and Woodward Road. (Appellant's Application for Special Use or Variance at 1) [hereinafter Application]. Presently, Appellant uses the property as a 3,300 square foot, three unit strip mall shopping center with a sixteen space parking lot.[1] (Tr. Hearing In re Jeff Anthony Properties of 6/20/02 at 5, 10) [hereinafter Tr. of 6/20/02]. The building is dimensionally nonconforming as it is not in compliance with the side setback requirement on the side facing Woodward Road. Id. at 33.
The Appellant seeks to construct a 1,000 square foot addition to the building, designed to comply with all setback and height requirements.[2]
To meet the applicable zoning requirements governing the number of off street parking spaces needed for the modified structure, Appellant will have to extend its parking lot to provide approximately eight additional spaces.[3] Zoning Ordinance of the Town of North Providence § 701 [hereinafter Zoning Ord.].
Jeff Anthony's lot is 115.5 feet wide and 171.91 feet deep. (Application at 1.) The portion of the lot that fronts Mineral Spring Avenue is zoned Commercial General ("CG"), but the rear portion of the lot is zoned Residential Limited ("RL-10"). Of the two zones, RL-10 is more restrictive than CG. See id. § 104 (listing the zoning categories in order of most to least restrictive thus: RS, RL, RG, CL, CG, ML, MG). The zoning district boundary line divides the lot so more than 50% is in the less restrictive CG zone and a significantly smaller portion of the property is within the more restrictive R-10 zone. Id. at 6.
Appellant's building and proposed addition would be situated entirely within the portion zoned CG, and would be lawful uses in that zone. However, the proposed parking spaces would be located in the portion zoned RL-10. Under certain circumstances, an owner of a split lot parcel can construct a parking facility as an accessory use[4] without obtaining zoning relief. Zoning Ord. § 203(I). However, in such cases, the zoning of the proposed parking area must be equally or less restrictive than the zoning of the main use lot.[5] In this case, the main use lot is the portion of the parcel on which the structure is presently situated and on which the proposed addition to the building will also be situated. Because the zoning of the parking facility is more restrictive than the zoning of the main use lot, Appellant cannot construct a parking facility on the rear portion of its parcel without first obtaining relief from the zoning ordinance.
 APPLICATION FOR RELIEF UNDER ARTICLE 3 § 310
Jeff Anthony filed an application with the Zoning Board citing Article 3, § 310 of the Zoning Ordinance seeking to extend the regulations applicable to the less restrictive zone (CG) into the more restrictive zone (RL-10). (Application at 2.) Under Article 3, § 310, the Zoning Board of Review may issue a special use permit to owners of split lots who seek to extend the application of the regulations in a less restrictive zone into a more restrictive zone, but this section applies only in limited situations.
Jeff Anthony's reliance on § 310 is misplaced for two reasons. First, § 310 applies only to split lots where the Zoning District boundary line divides the lot so that the less restrictive zone is not more than 50% of the entire parcel. Here, more than 50% of the lot is in the CG, less restrictive zone. (Application at 6.) Second, § 310 does not apply to situations where the owner seeks permission to extend the application of the regulations beyond thirty feet from one zone to another. Here, the applicant seeks to extend the less restrictive zone and provide a parking facility beyond thirty feet into the RL-10 zone. (Tr. of 6/20/02 at 6.)
Appellant also cited three other sections of the zoning ordinance in its application: Article 4, § 409D; Article 9; and Article 5, § 503. (Application at 2.)
Under Article 4, § 409D, the owner of a structure which is nonconforming by dimension may not add or enlarge the structure unless the enlargement conforms to the applicable dimensional regulations. Because minimum off street parking requirements are considered dimensional regulations, the Appellant can only secure approval of its addition by showing that it will provide the minimum parking required by the Zoning Ordinance. See Newton v. Zoning Bd. of Rev. of Warwick,713 A.2d 239, 242 (R.I. 1998) (treating a request for relief from minimum off street parking requirements as one for dimensional relief); see also
5 Arden H. Rathkopf, The Law of Zoning and Planning, § 83:30 at 83-51 (2002) (noting that minimum off street parking requirements are generally treated as dimensional regulations). Appellant is seeking relief under § 310 to meet the requirements of § 409D.
Article 9 merely sets forth the administrative and enforcement criteria governing the Zoning Board. Appellant's mention in the application of Article 9 is not pertinent to Appellant's appeal.
Article 5, § 503 sets forth the standards for obtaining a variance. It is unclear why Appellant cited to this section of the Zoning Ordinance because Appellant was applying for a special use permit under § 310, not a variance.
The Zoning Board construed the application as a request for a special use permit under § 310 and advertised it as such. (North Providence Zoning Board of Review Public Notice of April 11, 2002; North Providence Zoning Board of Review Public Notice of June 6, 2002.) The application was placed on the agenda of two sessions of the Zoning Board of Review, and in both cases, it was advertised as a request for a "Special Use Permit Extension of a Legal Non-Conforming Use." Id.
At the hearing on June 20, 2002, the Chairman called the case and described the application as one "for permission to construct a one story addition to the existing buildings at 1385 Mineral Spring Avenue, special use permit, extension of a legal non-conforming use, extension of zoning districts. . . ." (Tr. of 6/20/02 at 4.) Appellant did not object to the characterization of Appellant's application as one for a Special Use Permit. The record is virtually void of any mention that Appellant was seeking a use variance rather than a special use permit. The only arguable references to the standards required under § 503 appear twice in the testimony of Appellant's real estate expert, James Sloan. Sloan expressed an opinion that ". . . [the] rear area, which is essentially from a land use standpoint now in limbo because it has no permitted use under the present classification that can be used in conjunction with the commercial use." (Tr. of 6/20/02 at 22.) Later in his testimony, he adds: ". . . there is no reasonable residential use, no use under the RL-10 classification either in the ordinance or as prescribed under the comprehensive plan to which that section of the property could be put. So this is really in my opinion the only reasonable alternative and a compromise." Id. at 26.
However, these mere references to the absence of any reasonable alternative use do not serve to modify an application for a special use permit to become one for a use variance. Appellant's mention of § 503 in the application likewise was insufficient to consider this appeal as one from the denial of an application for a use variance. Where the Appellant did not seek a use variance from the Zoning Board, and the Zoning Board did not consider the issue, this Court is bereft of authority to consider such an argument on appeal.[6] Northeastern Corp. v. Zoning Bd. ofRev. of the Town of New Shoreham, 534 A.2d 603, 605 (R.I. 1987).
Appellant's application met resistance from neighboring landowners, the Barbatos, who appeared at the hearing through counsel and offered expert testimony in opposition to Appellant's application. (Tr. of 6/20/02 at 31-47.) One of Appellant's principals, Anthony J. Manzo, testified in support of the application as did two experts: an engineer, David Fish, and a real estate expert, James Sloan. Id. at 5-31.
The Zoning Board issued its written decision denying Appellant's application on August 20, 2002. The Zoning Board found that granting the permit would adversely affect property values, increase traffic congestion, which would have an inconvenient and adverse effect upon the welfare of the public, and would not conform to the Town's Comprehensive Plan. (Decision of Zoning Board of Review of North Providence of August 20, 2002 at 1-2.)
Appellant filed a timely appeal from the Zoning Board's decision. On appeal, Appellant argues that the Zoning Board's decision should be reversed because the Zoning Board did not make sufficient findings of fact, abused its discretion, and committed errors of law.
 STANDARD OF REVIEW
When reviewing a decision of a zoning board, the Superior Court may not substitute its judgment for that of the board if it conscientiously finds that a board of review's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). Questions of law, however, are not binding upon a reviewing court and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflict of Interest Com'n, 509 A.2d 453,458 (R.I. 1986). Furthermore, it is well settled that this Court may sustain a correct judgment "even if it was reached through faulty reasoning or mistake of law." Mesolella v. City of Providence,439 A.2d 1370, 1373 (1982) (citing Berberian v. Rhode Island Bar Assoc.,424 A.2d 1072 (R.I. 1982); Souza v. O'Hara, 395 A.2d 1060 (R.I. 1978)).
 DECISION DENYING JEFF ANTHONY'S APPLICATION
Jeff Anthony should not have applied for relief under § 310 for a special use permit. The Zoning Board should have denied Appellant's application because Appellant was not entitled to obtain relief under § 310. Instead, the Zoning Board decided the application as though § 310 did apply to Jeff Anthony's proposed project.
The Board found that Appellant did not meet the criteria under the standards applicable to a petition for a special use permit under § 310 of the Zoning Ordinance.[7] The Zoning Board determined that the Appellant was not entitled to relief because its proposal would increase traffic, adversely impact neighboring properties, and was inconsistent with the Comprehensive Plan. (Decision at 1-2.) Because the Appellant was ineligible for the special use permit requested, the Zoning Board acted in excess of its statutory authority and in violation of the Zoning Ordinance when it considered the Appellant's request on its merits. For this reason, the Court does not reach the issue of whether the Board's findings of fact were supported by substantial, reliable and probative evidence in the record.
The Zoning Board correctly denied Appellant's petition, but did so on incorrect grounds. However, where the Zoning Board makes a correct decision though based on the wrong reasons, this Court may uphold it.Mesolella, 439 A.2d at 1373. Because the application for a special use permit was properly rejected, the Court denies Appellant's appeal and affirms the decision of the Zoning Board.
 CONCLUSION
After review of the entire record, the Court finds that the decision of the Zoning Board denying Appellant's application was not clearly erroneous and did not constitute an abuse of discretion even though it was decided upon incorrect grounds. Substantial rights of the parties have not been prejudiced. The Appellant's appeal is denied. Counsel shall submit an appropriate order for entry, consistent with this decision.
[1] Although Anthony J. Manzo, one of the principals of Jeff Anthony Properties, testified that there were seventeen or eighteen existing spaces, Tr. at 10, the Preliminary Site Plan Appellant submitted with its application indicated that sixteen exist. (Application at 6.)
[2] The Zoning Ordinance provides that buildings in districts zoned CG must be set back at least twenty feet from the front, side and rear of the lot, be no higher than thirty-five feet tall, be at least twenty-five feet from residential properties, and cover no more than fifty percent of the lot. There is no minimum lot size. Zoning Ord. § 204(B). Appellant's application indicates that all of these requirements would be met with regard to the addition.
[3] The Court estimates that approximately eight additional spaces would be required as the addition would bring the square footage of the building up to 4380 square feet and the Zoning Ordinance requires that one parking space be provided for every 180 square feet of gross leaseable space. Zoning Ord. § 710.
[4] An accessory use is defined as:
 "A use of land or of a building, or portion thereof, customarily incidental and subordinate to the principal use of the land or building. An accessory use may be restricted to the same lot as the principal use. An accessory use shall not be permitted without the principal use to which it is related." Zoning Ord. art. XIII.
[5] A "main use" is defined as "[t]he general use to which a lot of land or structure is dedicated and advertised." Zoning Ord. art. XIII.
[6] In addition, the Rhode Island Supreme Court has held that in order to fulfill due process requirements, it must "advise concerning the precise character of the relief sought and the specific property for which that relief is sought." Carroll v. Zoning Bd. of Review,104 R.I. 676, 679 (R.I. 1968).
[7] This standard requires the Zoning Board to determine whether the proposed use would comply with the Town's Comprehensive Plan, whether it would serve the public convenience, whether it would create conditions inimical to the public health, safety, morals, and general welfare, and whether it would injure the appropriate use of surrounding property. Zoning Ordinance § 505.