DECISION
This matter is before the Court on the appeal of James D'Ambra, Laureen D'Ambra, Jacquelyn Tracy, Richard Watelet, Ann Watelet, Raymond Andro, Brenda Andro, Stanley Pozucek, Barbara Pozucek, Frank Wilson, Constance Wilson, *Page 2 
Anthony Deberadis, Sylvia Deberadis, Patricia Barnes-McConnell, and Gerald Harbour ("Appellants") from a decision of the Zoning Board of Review of the Town of Narragansett (the "Board"). The Board's decision, dated July 19, 2007 and recorded July 26, 2007, granted to Appellees David and Kathleen Baptista conditional relief from certain provisions of the Town of Narragansett Zoning Ordinance (the "Ordinance"). Appellants filed a timely complaint to this Court on August 15, 2007. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
On November 26, 2006, David and Kathleen Baptista filed an application with the Town of Narragansett Zoning Board to construct a hotel on property located on Ocean Road, designated as Lot 237-A on Narragansett Tax Assessor's Plat Lot L. See Def. Ex. 1. The property is located in a B-A zoning district. (Tr. 1/11 at 3.) The Baptistas requested a special use permit to construct a hotel under Ordinance § 6.1, a dimensional variance under § 6.4, a parking variance under § 7.9, and variances from development standards under § 12.13. (Tr. 1/11 at 2.)
More specifically, the Baptistas sought to construct a sixteen-room inn on the subject property. (Tr. 1/11 at 3.) Their proposal included a portico located 6.3 feet from the front property line, where a twenty foot setback was required under Ordinance § 6.3. Id. The proposal provided for only twenty-two parking spaces, where 1.5 parking spaces per room (or, here, twenty-four parking spaces) were required under Ordinance § 7.9. Id. at 4. Some of the proposed parking spaces were to be located within five feet of the property line, where Ordinance § 12.13 provided that "motels and tourist courts" could not have parking within ten feet of the property line. Id. at 3-4. The proposal also *Page 3 
included plans for an in-ground swimming pool (Tr. 1/11 at 7.) and a kitchen and dining room (Tr. 1/11 at 11.).[1]
On December 5, 2006, the Baptistas appeared before the Town of Narragansett Planning Board for site plan review. At that time, the Planning Board issued a Certificate of Completeness. See Def. Ex. 2. The Planning Board also approved a motion that the application was in conformance with the Town of Narragansett's Comprehensive Plan (the "comprehensive plan") and issued a recommendation that the Zoning Board grant the Baptistas' application subject to certain conditions.See Def. Ex. 3 at 2.
On January 11, 2007, the Board held a public hearing on the Baptistas' application. The first witness to testify was David Baptista. Mr. Baptista testified that the proposed building would be a three-story, sixteen-room inn. (Tr. 1/11 at 7.) He stated that the proposed portico was primarily included for the convenience of guests checking in to the inn, and that it would not affect site lines along Ocean Road.Id. at 8. The proposed dining room would include approximately fifty to sixty seats, and would serve exclusively guests during the summer and primarily guests during the off-season. Id. at 11-12. During the winter, the dining room would be available for parties such as anniversary parties or bridal showers. Id. at 21-22. He noted that, although only twenty-two parking spaces were included in the plan as then-presented, land surveyor Amy Sonder had been able to amend the plan to include two more spaces, thus eliminating the need for a variance. Id. at 17. Finally, he testified that the proposed inn had been *Page 4 
designed to be consistent with the architectural style prevalent in the neighborhood. Id. at 18-19.
The next witness to testify was Amy Sonder, who was recognized as an expert land surveyor. (Tr. 1/11 at 24.) Ms. Sonder testified that the site plan was in compliance with all wetlands and dimensional requirements with the exception of the portico for which the Baptistas had requested a variance. Id. at 25-27. She stated that, from her professional perspective as a land surveyor, the Baptistas' proposed inn would not create conditions inimical to the public health, safety, morals, and general welfare. Id. at 29. She further stated that the inn would not substantially or permanently injure the appropriate use of the surrounding properties. Id. Finally, she testified that in her professional opinion, the requested variance for motels and tourist courts was unnecessary for an inn. Id. at 29-30. Along with her testimony, Ms. Sonder submitted to the Board a revised site plan providing for twenty-four parking spaces, which she had prepared after determining that the requirements for motels and tourist courts did not apply to the Baptistas' proposal. Id.
The next witness to testify was Craig Carrigan, who was recognized as an engineering expert. (Tr. 1/11 at 35-36.) Mr. Carrigan testified that the proposed portico would not affect site lines along Ocean Road.Id. at 38. He further testified that, from an engineering standpoint, the proposed inn would not substantially or permanently injure the appropriate use of the surrounding properties. Id. at 40-41.
Shortly thereafter, Alan Berry was recognized as an expert in architecture. (Tr. 1/11 at 56.) Mr. Berry testified that he had designed the proposed hotel to be consistent with the local architecture, maintaining a residential feel and using "the local vernacular *Page 5 
materials of cedar shingles, the cream and green colored trim, and a blue-gray slate architecture, gray asphalt roof." Id. at 57. He further testified that the size of the building would generally conform to the standards of the neighborhood. Id. at 57-58.
The next witness to testify was Ned Caswell, who was recognized as an expert in real estate matters. (Tr. 1/11 at 59-60.) Mr. Caswell testified that the neighborhood of the proposed inn was mixed commercial and residential use, that the lot on which the proposed inn was to be built was zoned commercial, and that the comprehensive plan recommended that commercially zoned properties be used to encourage extended stays by vacationers. Id. at 61-62. He further testified that, in his professional opinion, the proposed inn would not result in or create conditions inimical to the public health, safety, or general welfare, nor would the inn substantially or permanently injure the surrounding uses. Id. at 68. Mr. Caswell noted that residential properties located near commercial properties in Narragansett generally remain very valuable, because "some people like to be inside of a commercial area."Id. at 69. Additionally, he offered the opinion that the level of parking provided by the proposed inn would not be so low as to significantly affect surrounding properties. Id. at 67-77.
The next witness to testify was Judge Laureen D'Ambra of the Rhode Island Family Court, who testified in her capacity as an abutting landowner. (Tr. 1/11 at 79.) Judge D'Ambra testified that there had been no hardship demonstrated by the preceding testimony, and that the Board was, therefore, constrained to deny any requested variances.Id. at 80-81. She further testified that the increased traffic brought by the proposed inn would create a public safety hazard, particularly to pedestrians. Id. at 83. *Page 6 
She offered her opinion that the proposed inn would not serve the public interest, as evidenced by a petition signed by a majority of neighbors.Id. at 79, 84.
Following Judge D'Ambra, a number of neighbors testified in opposition to the proposed inn. Most neighbors cited increased traffic and insufficient parking as reasons for their opposition. Finally, counsel for Appellants argued that the hearing should be continued because Appellees brought forth expert witnesses who had not been set forth in the notice of the hearing. Counsel also argued that due process required that the neighbors be permitted to respond to these expert witnesses. The hearing was then continued to February 8, 2007 by motion of the Board.
Prior to the continued hearing, the Baptistas filed a revised site plan. Under the new site plan, the proposed hotel was shifted to allow room for more parking and to bring the plan into accordance with town dimensional requirements, thereby eliminating the need for any variances. On March 27, 2007, the Planning Board issued a revised project summary, again finding that the application was complete and in conformance with the comprehensive plan, and again recommending conditional approval by the Zoning Board. See Def. Ex. 4.
On May 17, 2007, the Board continued the public hearing begun on January 11, 2007. The first witness to testify was Amy Sonder, who was again recognized as an expert land surveyor. (Tr. 5/17 at 4.) Ms. Sonder presented the revised site plan, testifying that the entire hotel had been shifted back ten feet, and the size of the portico reduced, thereby eliminating the need for any dimensional variance. Id. at 5. Shifting the hotel had also allowed room for an additional two parking spaces, bringing the number of proposed spaces to twenty-four and eliminating the need for a parking variance. Id. Ms. *Page 7 
Sonder testified that all other portions of her testimony from the January 11 hearing remained accurate. Id.
Craig Carrigan also testified again as an engineering expert, providing that the revised proposal would not substantially change his original testimony. (Tr. 5/17 at 10-11.)
Ned Caswell then testified again as a real estate expert. (Tr. 5/17 at 12.) Mr. Caswell testified that the revised proposal would not substantially change his original testimony. Id. He also expanded on his original testimony, providing further support for his expert opinion that real estate values in mixed commercial and residential neighborhoods remain high. Id. at 14.
The next witness to testify was Ramsey Loqa, who was recognized as an expert in zoning and building code matters. (Tr. 5/17 at 16-18.) Mr. Loqa testified that an accessory use "would be solely for the purpose of serving the occupants of the building, and none other than that."Id. at 19. He further testified that a restaurant is generally not an accessory use, and that any restaurant included in the plan must therefore provide an additional 1.5 parking spaces per four restaurant occupants. Id. at 21. He also testified that his opinion would apply equally to a restaurant and a dining room that served persons other than occupants of the building. Id. at 23.
The next witness to testify was William McGovern, who testified as an expert in real estate. (Tr. 5/17 at 32-33.) Mr. McGovern testified that, in his professional opinion, the highest and best use of the subject property was "any one of the legally permitted uses as noted in the zoning ordinance, without regard for special use permits. . . ."Id. at 37. He testified that the proposed inn would not be in harmony with the character of the *Page 8 
neighborhood, which he described as primarily residential. Id. at 37-38. He further testified that the inn would reduce the conformity of the neighborhood, and that the loss of conformity would reduce the values of the surrounding properties. Id. at 38. Finally, he offered his professional opinion that the proposed inn would be inimical to the public health, safety, and welfare, and not in compliance with the comprehensive plan. Id. at 40-41.
Following Mr. McGovern, the owner of the subject property and a number of neighbors testified both for and against the proposed inn. The Board then closed the public hearing and put forth a motion for certain findings of fact. (Tr. 5/17 at 95.) The Board's findings that are relevant to this appeal follow.
First, the Board found that the proposed inn complies with all applicable requirements based on the certification of the Planning Board. (Tr. 5/17 at 109.) Second, the Board found that the proposed inn is in harmony with the comprehensive plan based on the testimony of Ned Caswell. Id. at 110. Third, the Board found that there was sufficient testimony to support the requirement that the proposed inn would substantially serve the public welfare. Id. Fourth, the Board likewise found that the proposed inn would not be inimical to the public welfare.Id. The Board based this finding on the testimony of Amy Sonder, Craig Carrigan, and Ned Caswell. Id. at 110-11. Fifth, the Board found that the testimony of Amy Sonder, Craig Carrigan, and Ned Caswell also supported the requirement that the proposed inn would not substantially infringe on the appropriate use of the surrounding property.Id. at 111. Finally, the Board found that it had considered access to light, air, views, the sun, and water bodies, as well as energy conservation and efficiency. Id. *Page 9 
The Board then voted unanimously to approve the Baptistas' application for a special use permit. On July 19, 2007, the Board issued a decision restating its findings of fact and its approval of the Baptistas' application. The decision was recorded on July 26, 2007. On August 15, 2007, Appellants appealed the Board's decision to this Court.
 STANDARD OF REVIEW
Section 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); see also Mauriciov. Zoning Board of Review of the City of Pawtucket, 590 A.2d 879, 880
(R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts a de novo review of that issue. Tanner v.Town Council, 880 A.2d 784, 791 (R.I. 2005). *Page 10 
As to this Court's review of a zoning board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quotingToohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (internal quotations omitted). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance."Id. In short, a reviewing court may not substitute its judgment for that of the board's if the court "can conscientiously find that the board's decision was supported by substantial evidence in the whole record."Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingApostolou v. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 ANALYSIS
Appellants advance seven arguments in their appeal of the Board's decision. First, Appellants argue that an inn is a prohibited use in a B-A zone, and that the Board therefore had no authority to issue a special use permit here. Second, Appellants argue that the decision of the Board was the result of illegal procedure, specifically the failure of the Planning Board to provide notice of its hearing. Third, Appellants argue that the restaurant approved by the Board as a part of the hotel is actually a principal use which requires a separate special use permit. Fourth, Appellants argue that the restaurant approved by the Board, whether it is a principal or an accessory use, is a second use which requires additional parking pursuant to Ordinance § 7.16(a). Fifth, Appellants argue that there was insufficient evidence to support the necessary finding that the *Page 11 
proposed use was "in harmony with the general purpose and intent of this ordinance and the comprehensive plan of the town of Narragansett" as required by Ordinance § 12.5(2). Sixth, Appellants argue that there were insufficient factual findings for the Board's decision as a whole. Seventh, Appellants argue that the proposed inn will as a matter of law contribute to the congestion and heavy traffic of the area, and therefore is not in "compliance with the comprehensive plan of the Town of Narragansett" as required by Ordinance § 12.5. Each argument will be addressed in turn.
1. Because an inn is a hotel under the Ordinance, an inn is not aprohibited use in a B-A Zone.
First, Appellants argue that an inn is a prohibited use in a B-A zone. Ordinance § 6.3 provides that "[a]ny use not permitted by this ordinance shall be deemed to be prohibited." Ordinance § 6.3 provides that a hotel is a permitted use in a B-A zone if a special use permit is obtained. An inn is not specifically enumerated as a permitted use under Ordinance § 6.3; however, Ordinance § 2.2 defines an inn as "[a] hotel consisting of 30 or fewer rooms available for transient lodging." Because an inn is a hotel, and because a hotel is a permitted use, an inn must therefore also be a permitted use.
Appellants suggest that such a reading of the Ordinance does not sufficiently reflect the distinction between inns and hotels under the Ordinance.[2] This suggestion is false. The distinction is that under the Ordinance not all hotels are inns, whereas all inns are hotels. The familiar analogy is that of the square and the rectangle — here, an inn is *Page 12 
akin to the more specific square, while a hotel is like the more general rectangle. The result is that where the Ordinance permits a hotel, an inn is necessarily permitted as well, but where the Ordinance permits an inn, a hotel is not necessarily permitted. Because an inn is in fact a hotel, and because a hotel is a permitted special use in a B-A zone, Appellants' first argument fails.
2. Although there is no evidence that the Planning Board publishednotice of the application for site plan review, failure to publishnotice did not prejudice Appellants' substantial rights.
Second, Appellants argue that the decision of the Board was the result of illegal procedure. Specifically, Appellants argue that the Planning Board did not publish notice of the amended site plan, as required by Ordinance § 18.5(a).[3] Ordinance § 18.5(a) provides that "[t]he planning board shall publish notice of the application for site plan review, and may provide an opportunity for public comment during which the site plan, the [environmental assessment form] or [environmental impact statement], and the comments of reviewing entities may be made available for public inspection." Here, Appellants are correct that there is no evidence on the record that the Planning Board ever published the application for site plan review. The absence of evidence that the Planning Board published notice, however, does not end this Court's inquiry; Appellants still have not demonstrated that this procedural defect prejudiced their substantial rights. Section 45-24-69(d).
Although the Planning Board is required to publish notice of a site plan submitted for review, the Planning Board is not required to allow public comments. See Ordinance § 18.5(a). In fact, even if Appellants had received notice of the plan review, neither the *Page 13 
Ordinance nor the zoning enabling act required the Planning Board to afford Appellants any opportunity to comment or otherwise influence the plan review. Section 45-24-49; Ordinance § 18.5. Furthermore, under the Rhode Island zoning enabling act, site plan review is merely "advisory to the permitting authority. . . ." Section 45-24-49. Accordingly, Ordinance § 18.5 provides that the result of a plan review is a "report" which contains "recommend[ations]" to the Board. Because Appellants had no right to provide input to the Planning Board, and because the Planning Board merely produces an advisory report, notice of the site plan application would not have permitted Appellants to alter the Planning Board's report in any way. The failure of the Planning Board to publish notice pursuant to Ordinance § 18.5(a) therefore did not prejudice the Appellants' substantial rights. Accordingly, Appellants' second argument fails.
3. Notwithstanding expert testimony to the contrary, a restaurantthat is part of a hotel is not a principal use, and therefore does notrequire a separate special use permit.
Third, Appellants argue that the restaurant approved by the Board as a part of the hotel is actually a principal use requiring a separate special use permit. Appellants argue that this is so because the restaurant would potentially be available to members of the public as well as guests of the inn. In support of their argument, Appellants introduced uncontroverted expert testimony that a use which is available to the public is by definition a principal use; in contrast, according to Appellants' expert, an accessory use may only be available to principal users (here, guests of the inn). (Tr. 1/11 at 21.) (testimony of Ramsey Loqa). However, this testimony is no more than the expert's interpretation of whether the proposed restaurant was an accessory use as defined by § 45-24-31 and Ordinance § 2.2. It is axiomatic that "expert testimony proffered solely to establish the meaning of a law is presumptively improper." 31A Am. Jur. 2d Expert and *Page 14 Opinion Evidence § 117, p. 142 (2002). Therefore, the Board was in no way required to defer to Appellants' expert's improper testimony regarding his conclusions of law.
Moreover, the expert's conclusions of law appear to have no basis either in the zoning law enabling statute or in the Ordinance. Section 45-24-31 first provides that "the words and phrases defined in this section are controlling in all local ordinances created under this chapter," then goes on to define an accessory use as:
 A use of land or of a building, or portion thereof, customarily incidental and subordinate to the principal use of the land or building. An accessory use may be restricted to the same lot as the principal use. An accessory use shall not be permitted without the principal use to which it is related.
Ordinance § 2.2 tracks the language of § 45-24-31 word for word. There is simply nothing in the definition of accessory use which would restrict an accessory use to serving only persons partaking in the property's principal use, but not members of the general public.
Finally, the definition of accessory use is irrelevant here. This is so because the definition of hotel provides that a restaurant is not a separate use, but simply a non-essential element of a hotel.See Ordinance § 2.2 (providing that a hotel is "[a] building of two or more stories providing transient lodging accommodations to the general public . . . [which] may contain accessory facilities including, but not limited to, a restaurant. . . ."). When a restaurant is a component of a hotel, the restaurant is neither a principal use nor an accessory use, but is instead only part of a hotel. It would be illogical for the Ordinance both to provide expressly that restaurant facilities may be part of a hotel and to require a separate special use permit for a restaurant appended to a hotel. Accordingly, no separate special use permit was necessary for the restaurant here, and Appellants' third argument fails. *Page 15 
4. Because a restaurant is not a use separate from a hotel use, butis instead a non-essential element of a hotel, the proposed parking issufficient under the Ordinance.
Fourth, Appellants argue that the restaurant approved by the Board, whether it is a principal or an accessory use, is a second use which requires additional parking pursuant to Ordinance § 7.16(a). This is so, they argue, because Ordinance § 7.16(a) provides that there must be sufficient parking to satisfy the parking requirement for each individual use — here, a hotel and a restaurant.[4] However, as discussed above, the definition of hotel provides that a restaurant is not a separate use, but simply a non-essential element of a hotel.See Ordinance § 2.2. Therefore, the proposal only needed to provide enough parking for the hotel — twenty-four parking spaces for the sixteen rooms.[5] The application satisfied this requirement. Accordingly, Appellants' fourth argument fails.
5. The record contains substantial evidence to support the Board'sfinding that the proposed inn was in harmony with the general purposeand intent of the Ordinance and the comprehensive plan of the Town ofNarragansett.
Fifth, Appellants argue that there was insufficient evidence to support the necessary finding that the proposed use was "in harmony with the general purpose and intent of this ordinance and the comprehensive plan of the town of Narragansett" as required by Ordinance § 12.5(2). Appellees, however, have pointed to more than enough evidence to meet the "substantial evidence" requirement for zoning board decisions.See Lischio v. Zoning Bd. of Review of the Town of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) ("Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance."). *Page 16 
Here, the Board issued a finding of fact that the proposal was in harmony with the general purpose and intent of the Ordinance and consistent with the comprehensive plan, based on the testimony of witness Ned Caswell. See Decision ¶ 28(2). Mr. Caswell testified that the proposed inn would substantially comply with the Comprehensive Plan because the inn would support the tourism industry and encourage extended stays by vacationers. (Tr. 1/11 at 61-62.) Indeed, as read into the record by Mr. Caswell, the Town of Narragansett comprehensive plan provides that:
 . . . for Narragansett, specialization would best be oriented towards its unique attributes of the shoreline, vacationing tourism and fishing. . . . The town can act to improve the quality of tourism by developing and assisting activities and services that encourage longer stays in town and discourage the predominance of day tripper tourism. . . . [R]ecognizing and supporting appropriate tourism activities is important to the overall economy and ambience of Narragansett. Id. at 62.
Mr. Caswell's testimony provides a sufficient basis for the Board's finding that the proposed inn was in harmony with the Comprehensive Plan of the Town of Narragansett. Accordingly, Appellants' fifth argument fails.
6. The record contains evidence to support the Board's finding thatthe proposed inn fulfilled each prerequisite to a special usepermit.
Sixth, Appellants argue that there were insufficient factual findings for the Board's decision as a whole. To grant a special use permit, the Board is required to find the following:
 (1) That the use will comply with all applicable requirements and development and performance standards set forth in sections 4 and 7 of this ordinance;. . . .
 (2) That the use will be in harmony with the general purpose and intent of this ordinance and the comprehensive plan of the town of Narragansett;
 (3) That the granting of the special use permit will substantially serve the public convenience and welfare; *Page 17 
 (4) That the use will not result in or create conditions inimical to the public health, safety, morals, and general welfare;
 (5) That it will not substantially or permanently injure the appropriate use of surrounding property. Ordinance § 12.5.
The Board must also consider "a. Access to air, light, views, and solar access[;] b. Public access to water bodies, rivers and streams[; and] c. The conservation of energy and energy efficiency." Ordinance § 12.5(6).
Paragraph 28 of the decision sets forth its findings of fact and the testimony on which those findings were made. See Decision. Paragraph 28 essentially recites the Board's findings of fact as adopted at the January 11, 2007 hearing. (Tr. 5/17 at 95-112.)
First, the Board found that the proposed inn complies with all applicable requirements based on the certification of the Planning Board. (Tr. 5/17 at 109.) Additional support for this finding lies in Amy Sonder's testimony that there are no wetlands on the site and that (with the exception of the portico as originally proposed) the site plan conforms to the Ordinance's dimensional requirements. (Tr. 1/11 at 25-27.)
Second, the Board found that the proposed inn is in harmony with the Comprehensive Plan of the Town of Narragansett based on the testimony of Ned Caswell. Id. at 110. Mr. Caswell testified that the proposed inn would substantially comply with the Comprehensive Plan in that the inn would support the tourism industry and encourage extended stays by vacationers. (Tr. 1/11 at 61-62.) (for further discussion see supra
pp. 15-16).
Third, the Board found that there was sufficient testimony to support the requirement that the proposed inn would substantially serve the public welfare. (Tr. 5/17 at 110.) Fourth, the Board likewise found that the proposed inn would not be inimical to *Page 18 
the public welfare. Id. Indeed, Amy Sonder testified that in her professional opinion as a land surveyor, the proposed inn would not create conditions inimical to the public welfare. (Tr. 1/11 at 29.) Craig Carrigan testified that, from an engineering standpoint, the proposed inn would not create conditions inimical to the public welfare.Id. at 40. Ned Caswell testified that in his opinion as a real estate expert, the proposed inn would not create conditions inimical to the public welfare. Id. at 68. Howard Goldsmith, the owner of the subject property, testified that "the planning board was totally in favor of [the inn] and thought it was exactly what the comprehensive plan was aiming for to revitalize the area and try to get some new construction that would bring in more people. . . ." (Tr. 5/17 at 72.) The above testimony provides a sufficient basis for the Board's finding that the proposed inn would not be inimical to the public welfare, but would instead substantially serve the public welfare.
Fifth, the Board found that the testimony of Amy Sonder and Craig Carrigan supported the requirement that the proposed inn would not substantially infringe on the appropriate use of the surrounding property. Again, Amy Sonder testified that in her professional opinion as a land surveyor, the proposed inn would not substantially or permanently injure the appropriate use of the surrounding properties. (Tr. 1/11 at 29.) Craig Carrigan testified that, from an engineering standpoint, the inn would not substantially or permanently injure the appropriate use of the surrounding properties. Id. at 40-41.
Appellants argue that the above findings of fact are insufficiently specific to support the Board's decision. In support of their argument, Appellants cite Irish Partnership v. Rommel, 518 A.2d 356, 358-59 (R.I. 1986), which holds that a mere *Page 19 
recitation that each element of the Ordinance at issue has been satisfied is insufficient. In Rommel, however, there were no specific findings of fact. Id. at 358. Here, there were thirty specific findings of fact, which do not merely recite the elements of a special use permit, but also relate to the facts as adduced at the hearing. SeeDecision, passim. Furthermore, these findings of fact are expressly based on the supporting testimony of specific witnesses. Id. The Board's findings of fact were therefore sufficient to support its decision to grant the Baptistas' application for a special use permit. Accordingly, Appellants' sixth argument fails.
7. The Board did not commit an error of law in finding that theproposed inn is in compliance with the comprehensive plan of the Town ofNarragansett.
Seventh, Appellants argue that the proposed inn will create demand for parking, and therefore as a matter of law is not in "compliance with the comprehensive plan of the Town of Narragansett" as required by Ordinance § 12.5. Appellants brought forth expert testimony that the proposal is not in harmony with the comprehensive plan because the proposed inn will add to the parking demands of the area. (Tr. 5/17 at 40-41.) (testimony of William McGovern). However, the Board was not bound to adopt the expert's opinion. See Cianciarulo v. Tarro, 92 R.I. 352, 360-61,168 A.2d 719, 723-24 (1961) (holding that an expert's testimony that a zoning amendment failed to accord with a comprehensive plan was not binding on the court). Indeed, other evidence supported a finding that the proposed one and a half parking spaces per bedroom will be more than sufficient to meet any demand created by the inn: Ned Caswell testified that hotels in mixed-use areas "get along fine, real fine with one parking space per bedroom." (Tr. 1/11 at 68.) The Board explicitly resolved these "conflicting expert opinions" (Tr. 5/17 at *Page 20 
110.) by determining that the inn is "consistent with the comprehensive community plan of Narragansett." See Decision ¶ 28(2).
Other evidence bolstered the Board's finding that the proposed inn is in compliance with the comprehensive plan. For example, Ned Caswell testified that the inn would support the tourism industry and encourage extended stays by vacationers. (Tr. 1/11 at 61-62.) (testimony of Ned Caswell). Indeed, Mr. Caswell specifically related the proposed inn to those provisions of the comprehensive plan relating to the encouragement of tourism. See supra pp. 15-16. Especially when considered as a whole, Mr. Caswell's testimony provided substantial evidence to support the Board's finding that the proposed inn is in compliance with the comprehensive plan of the Town of Narragansett. Accordingly, the Board's decision was not affected by any error of law, and Appellants' seventh argument fails.
 CONCLUSION
Appellants have failed to establish that their substantial rights were prejudiced by any error of the Town of Narragansett Zoning Board. Accordingly, this Court affirms the decision of the Board granting a special use permit to David and Kathleen Baptista for the construction of an inn.
Counsel for Appellees shall submit an order within ten days.
[1] In the Baptistas' application and in Mr. Baptista's testimony, the Baptistas consistently refer to a dining room rather than a restaurant. However, the Board's decision refers to this element of the Baptistas' application as a restaurant. The Court will, therefore, treat the dining room as a restaurant for purposes of its decision.
[2] Appellants' argument rests on the fact that Ordinance § 4.8.2 provides for a special district wherein hotels in general require a special use permit, but inns are permitted as a matter of course. The distinction in Ordinance § 4.8.2 effectively exempts inns from the special use permit requirement that applies to hotels — an exemption that makes sense because inns are simply small hotels. As Appellees point out, Appellants' argument here would lead to the absurd result that large hotels are permitted in B-A ("limited business") zones, whereas small inns are prohibited. Rhode Island courts will generally avoid interpreting an ordinance in a manner that produces an absurd result. See Radick v. Zoning Bd. of Review of Town of EastProvidence, 84 R.I. 472, 475, 125 A.2d 105, 107 (1956).
[3] Appellants also argue that the failure to open the amended site plan for public comment was illegal procedure. This, however, is clearly against the letter of Ordinance § 18.5, which provides only that the board "may" open a site plan for public comment, not that the board "shall" do so.
[4] Ordinance § 7.16(a) provides that "[w]hen any lot or development contains two or more uses, the parking requirements for each use shall apply."
[5] Ordinance § 7.9(2) requires 1.5 parking spaces per room for a "hotel." *Page 1